JAMES R. HANCE, Appellant, v. THE PACIFIC EXPRESS COMPANY, Respondent.

St. Louis Court of Appeals, February 16, 1892.

1. **Common Carriers** : LIVE FREIGHT : BURDEN OF PROOF. Where live freight is carried, the shipper, in order to hold the carrier for injury to it must show that a human agency caused or concurred in causing the injury, the risk resulting from disease or vice inherent to such freight being one which the shipper, and not the carrier, assumes.

2. ――――: ――――: CHARACTER AND SUFFICIENCY OF EVIDENCE. But the intervention of such human agency may be established by circumstantial evidence, and *held*, that this sufficiently appeared with respect to a shipment of poultry, since it was shown that the poultry was apparently in good condition and properly cooped when received by the carrier, and that the weather during the transit was favorable, but that, nevertheless, a very large and very unusual part of the poultry, to-wit, more than one-third of it, had died in a transit lasting but a few hours.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

| 48 | 179 |
|----|-----|
| 57 | 139 |
| 48 | 179 |
| 66 | 487 |
| 48 | 179 |
| 72 | 19 |
| 48 | 179 |
| s66 | 486 |
| 81 | 114 |
| 81 | 115 |
| f81 | 235 |

REVERSED AND REMANDED.

*Ball & Ball*, for appellant.·

*Johnson, Smith & Drunert*, for respondent.

The instruction that under the evidence plaintiff could not recover was properly given. A carrier is not liable for losses due to the natural decay or inherent character of the goods shipped. Schouler on Bailments, p. 397; Hutchison on Carriers, sec. 222. A carrier is not a health or life insurer. Schouler on Bailments, p. 398 ; Story on Bailments, sec. 576 ; Hutchison on Carriers, sec. 218 ; *Hussey v. The Saragossa*, 3 Woods, 380 ; *The Powhattan*, 12 Fed. Rep. 376. When an animal sickens, dies or pines away while in transit, the carrier is not liable for loss. Schouler on Bailments, p. 431 ; Hutch. on Carriers, secs. 220-2; Hutch. on Carriers, sec. 218. Plaintiff's evidence shows affirmatively that something was wrong with the chickens. In the case of animate creatures proof of injury suffered is not sufficient to cast on carrier the burden of proof as to cause of injury. *Gillespie v. Railroad*, 6 Mo. App. 514; Schouler on Bailments, pp. 417–18. But plaintiff's testimony shows that the defendant had provided all the necessary means for transporting the chickens with a reasonable degree of safety. *Dunn v. Railroad*, 68 Mo. 268. There must be positive affirmative evidence that the defendant failed to use a reasonable degree of care to prevent the injury. *Dunn v. Railroad*, 68 Mo. 268. The loading in coops and shipment in that peculiar way was the act of plaintiff, and he assumes the risk incident to those conditions. Schouler on Bailments, pp. 392, 397, 410, 411, 433 ; *The Powhattan*, 12 Fed. Rep. 880. When the real cause of the injury is in doubt, the carrier is not liable at shipper's suit. Schouler on Bailments, p. 420 ; *Hussey v. The Saragossa*, 3 Woods, 380 ; *The Powhattan*, 12 Fed. Rep. 880.

ROMBAUER, P. J.—The plaintiff is a shipper of poultry, and the defendant a common carrier. On the twenty-third of May, 1889, the plaintiff delivered to the defendant at Montgomery City, Missouri, nineteen coops containing live poultry for transportation to St. Louis, Missouri. The poultry was apparently in a healthy condition, and the coops were well filled but not overcrowded. The weather was fair. and cool. The coops, when the shipment arrived in the city of St. Louis, were found stowed away in the center of the car three or four coops high, as is usual in such shipments. The express car was a large new car of an improved pattern, especially built for transporting this class of freight, with extra doors and windows to give sufficient ventilation, but there was no evidence showing the storage of the coops or ventilation of the car while in transit. Upon the arrival of the car in St. Louis a few hours afterwards, it was found that, out of the number shipped, one hundred and fifty-six chickens and two turkeys were dead. Those that survived were in good condition. The death rate was extraordinary. No external injury was shown on any of the poultry ; noɪ was the cause of their death shown. It appeared that they smelt bad. One of the witnesses testified that coops reasonably well filled and put up in an express car, unless there was something the matter with the chickens, would go through safely.

The foregoing facts appearing by the plaintiff's evidence, the court at its close instructed the jury to find for the defendant, which they did. The plaintiff, appealing, assigns for error, that the proof made out a *prima facie* case for him, and he should have been permitted to go to the jury thereon.

The question of burden of proof in determining the question of negligence, as far as it affects the liability of the carrier in the transportation of live freight, is one of some difficulty. In *Clark v. Railroad*, 14 N. Y. 573, Judge DENIO thus states the proposition: "The

plaintiffs contend for the rule that the carrier is bound
to transport in safety and deliver at all events, save
only the known cases in which a carrier of ordinary
chattels is excused, while the defendants maintain that
they are not insurers at all against the class of accidents
which arise from the vitality of freight. We are of
opinion that neither of these propositions is well taken.
A bale of goods or other inanimate chattels may be
so stowed as that absolute safety may be attained.
* * * The rule established from motives of policy,
which charges the carrier in almost all cases, is
not, therefore, unreasonable in its application to such
property. But the carrier of animals by a mode of con-
veyance opposed to their habits and instincts has no
such means of securing their absolute safety. They
may die of fright, or by refusing to eat, or they may,
notwithstanding every precaution, destroy themselves
in attempting to break away from the fastenings by
which they are secured in the vehicle used to transport
them, or they may kill each other. * * * Where,
however, the cause of the damage for which recom-
pense is sought is unconnected with the conduct or
propensities of the animal undertaken to be carried, the
ordinary responsibilities of the carrier should attach.''
That, however, was a case where the proof was clear.
that the animal died a violent death by strangulation
from the halter fastening it, and, hence, the learned
judge omits to discuss the law applicable to a case
where the animal dies from sickness.

In *Hussey v. The Saragossa*, 3 Woods, 380, where a
horse was delivered to the carrier in apparent good
health and condition, and was delivered by him at the
termination of the voyage in a dying condition, WOOD,
J., thus stated the law: "When the carrier fails to
deliver goods, or when he delivers goods in a dam-
aged condition, the *onus* is cast upon him to show
that he is not in fault. In other words, loss or injury

is sufficient proof of negligence or misconduct, or of the intervention of human agency, and, when shown, the burden is on the carrier to exempt himself. But the shipper must show an *injury* to the article shipped, before the burden is cast upon the carrier to exonerate himself. Is an injury shown when the article shipped is a horse or other live stock, which is proved to have been delivered to the carrier in good health and condition, and to have been redelivered to the shipper in a sick and debilitated condition, but without any fractures, wounds, abrasions or other external or visible injury? I think not." It must be borne in mind, however, that the learned judge while stating the rule did not deem it necessary to apply it in that case, but found as a fact from the weight of the evidence that the horse died from natural causes, and would have died in the same space of time, if he never had been put on board the Saragossa.

Both of these cases seem to have been decided upon a careful analysis of the law. They hold in substance that the transportation of live stock forms an *exception* only so far as the burden of proof is concerned. Where the injury is one to dead freight, the mere proof of receipt in good condition and delivery in a damaged condition fixes *prima facie* the carrier's liability; but where it is live freight the shipper must, in the first instance go further, and must show an injury by human agency, causing, or concurring to cause, the loss or damage complained of. The risk resulting from disease or vice inherent in the animal is one which the shipper assumes, and not the carrier, to the same extent as if it were expressly excepted in the shipping contract.

While this is the law, it does not follow that such injury must be shown by direct evidence to have resulted from the carrier's negligence, before the carrier is called upon to show due diligence. The case stands like any other case of exception; and proof of negligence may be made by circumstances. In case of

breakage, where that forms an exception, goods may be broken to such an extent, while in transit, as to make their appearance at the terminus of the transit evidence tending to show the carrier's negligence. *Witting v. Railroad*, 101 Mo. 631, affirming s. c., 28 Mo. App. 103. It appeared in that case that a fountain was properly packed and delivered to the carrier in good order, but that, when delivered to the consignee by the carrier, the fountain and the crates wherein it was shipped were broken and the stays displaced. BLACK, J., delivering the opinion, held this was evidence of negligence, as a *breakage of that kind* does not ordinarily occur when the property is transported with due care.

Applying the law as hereinabove stated to the facts disclosed by the record in this case, the following results follow: When the plaintiff gave vidence tending to show that the poultry was shipped in apparent good condition, properly cooped, in suitable weather for such shipment, and that, after a comparatively short run, the carrier delivered the poultry to the consignee with more than one-third of it dead, and that this death rate was so extraordinary that its parallel could not be shown, he certainly made out a *prima facie* case. Would he have rested there, it would have been incumbent upon the carrier to show that it used all proper care, which freight of that character required, in its transit between the place of receipt and the place of delivery.

It is true that the plaintiff went further, and also showed that the car in which the poultry was transported was a car of proper construction and approved pattern, and sufficiently provided with means of ventilation, and also showed that the poultry, when it arrived in St. Louis, was found properly stowed in the center of the car. *To that extent* the plaintiff made out part of the defendant's case showing absence of negligence in transportation. But there was no evidence

whatever showing that the car was properly ventilated during the transit, nor was there any evidence as to the stowage of the freight during the transit. In the absence of such evidence the court could not declare, as a matter of law, that the carrier had shown due diligence in the transportation of the poultry, or that the plaintiff's evidence rebutted all inference of negligence on part of the carrier during the transit, such inference being logically admissible from the extraordinary condition of the poultry at the termination of a transit consuming but a few hours. The instruction of the court to find for the defendant was, therefore, erroneous.

If, upon a retrial of the cause, it should satisfactorily appear that the carrier used due diligence in the stowage of the poultry and ventilation of the car, then the inference of negligence arising from the condition of the freight when delivered to the consignee would stand rebutted. But the plaintiff has the right to go to the jury even then, unless such facts appear by his own evidence. The judgment is reversed and the cause remanded. All the judges concur.