ASHLEY G. KNIGHT, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, October 1, 1906.

1. JURISDICTION: Circuit Court: Amount. In a civil action to recover money, whether founded on contract or tort or statutory penalty the circuit court has no jurisdiction unless the sum demanded, exclusive of interest and costs, exceeds fifty dollars.

2. ———: ———: ———: Penalty: Attorney's Fee. An attorney's fee which a statute attempts to give to a prevailing party seeking to recover a statutory penalty, should not be considered as part of the demand inuring to him for the tort committed, nor included in the amount necessary to confer jurisdiction upon the circuit court. [Cases considered and distinguished.]

3. ———: Cause of Action: Amendment: Departure: Amount. No amendment to confer jurisdiction should be permitted where the cause of action belongs to a class without the jurisdiction of the court, since such amendment would constitute a departure if it stated a cause of action within the jurisdiction; but where the jurisdiction fails solely through the insufficiency of the amount demanded and the facts pleaded would warrant a money recovery in a proper amount, an amendment merely expanding the amount would not change the cause of action.

4. ———: ———: Common Law: Statute. The rule that a statutory cause of action can not be amended into a common-law action, or vice versa, should not be arbitrarily applied and does not obtain where the same evidence supports both actions and the same measure of damages applies.

5. ———: ———: **Statute: Tort: Amendment: Remedy.** Under the statute the petition should contain a plain concise statement of the facts constituting a cause of action, and in actions *ex delicto* the wrong is the cause of action and the demand for relief is no part of the cause of action but the assertion of a right resulting therefrom, and the pleader's selection of one of two or more concurrent remedies does not serve to classify the action, and his substitution by amendment of another remedy does not constitute a departure.

6. ———: ———: **Carrier's Refusal to Accept Freight: Statutory Remedy: Amendment.** A shipper sued a carrier for refusal to accept freight for the statutory penalty, the total amount being less than the jurisdiction of the circuit court; he amended by adding a common-law count, stating the same facts, alleging his actual damages and claiming exemplary damages in a sum which brought the amount within the jurisdiction of the court. *Held*, the second count was proper and vested the court with jurisdiction over the subject-matter.

7. **COMMON CARRIERS: Refusal to Accept Freight: Imposed Restrictions: Insurer: Live Stock.** A common carrier has no right to refuse to transport property properly offered for shipment nor to impose restrictions and limitations on his common-law liability, and at common law he is an insurer except that in case of live stock he is not liable for damages resulting solely from the natural vices or propensities of the stock or its inability to stand the hardships incidental to the transportation.

8. ———: ———: ———: **Live Stock: Care.** The carrier should provide proper facilities for the carriage of live stock and protect it against serious injury from the want of food and water; but if he negligently fails to perform such duty the burden is on the shipper to show the existence of such negligence, but the fact that the animal required food and water during the journey, and the shipper's refusal to furnish an attendant to look after such matters, will not warrant the carrier in refusing the shipment or exacting a release from liability, but it must receive and carry the property without restricting its common-law liability.

9. ———: ———: ———: **Punitive Damages: Evidence.** Whether the carrier intentionally committed a wrong in refusing to receive freight or mistakenly supposed he was in the right, yet refused in a rude and insulting manner, he is liable for exemplary damages, since the carrier and his servants should observe the rule of ordinary courtesy in dealing with patrons and should not add insult to his torts.

Appeal from Grundy Circuit Court.—*Hon. Paris C. Stepp*, Judge.

AFFIRMED.

*J. G. Trimble* and *Hall & Hall* for appellant.

(1) The circuit court had no jurisdiction over the subject-matter of this suit. The original petition and cause of action was based on section 1082 of the Revised Statutes of 1899 for failure to receive and ship a hog. The damages claimed was two dollars which was asked to be trebled, so the amount sued for was six dollars. The circuit court in such case has jurisdiction only when the amount involved, exclusive of interest and costs, shall exceed fifty dollars. R. S. 1899, sec. 1674. (2) The attorney's fee sued for could only be allowed and taxed as costs. R. S. 1899, sec. 1140; Waters v. Waters, 49 Mo. 388. (3) Section 1140, so far as it relates to the attorney's fee is unconstitutional. Paddock v. Railroad, 155 Mo. 524. (4) The attorney's fee being illegal, and only recoverable as costs, at best, the amount involved was below the jurisdiction of the circuit court. Bradley & Co. v. Asher, 65 Mo. App. 589. (5) Sections 1140 and 1141, Revised Statutes 1899, do not have any application or reference to section 1082 and are not found in the original act. Paddock v. Railroad, 155 Mo. 524; Pool v. Brown, 98 Mo. 675; State ex rel. v. Heidorn, 74 Mo. 410; Cape Girardeau v. Riley, 52 Mo. 424. (6) The original petition was for a statutory action for treble damages; the second or additional count of the amended petition is for punitive or exemplary damages and is a departure and an entire change of the cause of action, and the trial court erred in overruling defendant's motion to strike out the same. Amendments are not admissible where they change the cause of action. R. S. 1899, sec. 657; Sims v. Field, 24 Mo. App. 557; Barnes v. Prewitt, 28 Mo. App. 163; Drake v. Railroad, 35 Mo. App. 553; Burnham & Co. v. Tillery & Co., 85 Mo. App. 453. (7) The second count

of the amended petition required different evidence to support it and called for a different measure of damages than the original or first count of the amended petition. Purdy v. Pfaff, 104 Mo. App. 331, 339; Ross v. Land Company, 162 Mo. 317, 329. (8) The original petition being a statutory proceeding, and as the circuit court had no jurisdiction of the subject-matter in the beginning, the plaintiff could not give the court jurisdiction by amending his petition by adding a common-law count and then dismissing as to the original statutory count and recover on the second or common-law count. The court having no jurisdiction in the beginning there was nothing to amend and it could not acquire jurisdiction by amendment, or such jockeying process. Norton v. Railroad, 48 Mo. 387; Abernathy v. Moore, 83 Mo. 65; Brown v. Woody, Admr., 64 Mo. 547; Elfrank v. Seiler, 54 Mo. 134. (9) Traffic being obstructed on defendant's railroad for an uncertain length of time, taking into consideration the nature of the property offered for shipment and the time of year, the defendant was justified in refusing to receive the same at the time offered, when the plaintiff refused to sign a contract releasing defendant from liability, or to send some person along to feed and water the hog. Faulkner v. Railroad, 51 Mo. 311; Schwab v. Union Line, 13 Mo. App. 163; Dawson v. Railroad, 79 Mo. 296; Guinn v. Railroad, 20 Mo. App. 453; Bussey v. Railroad, 13 Fed. 330. (10) The court erred in giving plaintiff's third instruction, especially that part of it which relates to exemplary or punitive damages. There was no evidence that appellant's agent Huff acted wantonly, or maliciously in refusing to receive the hog for shipment. Exemplary damages are allowed against a corporation only in cases where the injury is intentionally, willfully and maliciously done. Printing Company v. Kahn, 59 Am. St. 485, note 591; Leahy v. Davis, 121 Mo. 227, 232; State v. Jung-

ling, 116 Mo. 162; Brown v. Cape Girardeau M. & P. Road Co., 89 Mo. 152; Seibel v. Siemon, 72 Mo. 526; Graham v. Railroad, 66 Mo. 536; Doss v. Railroad, 59 Mo. 27; Franz v. Hilterbrand, 45 Mo. 121; Hoffman v. Gill, 102 Mo. App. 320; Yowell v. Vaught, 85 Mo. App. 206; Dorsey v. Railroad, 83 Mo. App. 528; Lewis v. Jannoupoulo, 70 Mo. App. 325; Berlin v. Thompson, 61 Mo. App. 234; Clark v. Fairley, 30 Mo. App. 335; Railroad v. Prentice, 147 U. S. 101; Avinger v. Railroad, 29 S. C. 265, 13 Am. St. 716.

*E. M. Harber, H. C. Smith* and *Hubbell Bros.* for respondent.

(1) What is meant by the term "cause of action?" "The act on the part of the defendant which gives the plaintiff his cause of complaint." It may be said to be composed of the right of the plaintiff and the obligation, duty, or wrong of the defendant. Anderson Law Dict., page 157. (2) "The cause of action should not be mistaken for the remedy. The remedy is the object of the action, not the cause. To illustrate: A is deprived of a certain right. To secure that right is the object of his action; while the deprivation or invasion, or threatened deprivation or invasion, of the right, furnishes his cause of action." Bliss on Code Pldg. (3 Ed.), sec. 1, page 2, note 4. "The cause of action, then, is the wrong." Bliss on Code Pldg. (3 Ed.), sec. 113. "The breach of duty is substantially the cause of action." 1 Boone Code Pldg., sec. 36; Emory v. Powder Co., 53 Am. Rep. 732; 2 Words and Phrases, 1015. (3) In the first count of his amended petition, the plaintiff alleged the same cause of action as in the original petition—in fact, the first count of the amended petition being substantially a copy of the original petition. In the second count of his amended petition, the plaintiff alleged that the defendant "contemptuously, insolently,

wrongfully, and maliciously refused to ship said hog or to receive the same for transportation," after alleging proper, tender, etc. (4) Plaintiff's original petition stated a cause of action both under the statute and at common law. Lawson on Bailments (1895), sec. 89; 5 Am. and Eng. Ency. Law (2 Ed.), 159; 5 Am. and Eng. Ency. Law (2 Ed.), 430; R. S. 1899, sec. 1128; 5 Am. and Eng. Ency. of Law (2 Ed), 160, 161, 167; R. S. 1899, sec. 1082; Avinger v. Railroad, 35 Am. and Eng. R. R. Cases 525; Smyth v. Ames, 18 Sup. Ct. Rep. 433; s. c., 169 U. S. 466, 42 L. Ed. 819; Railroad v. Smith, 22 Am. and Eng. Railroad Cases 424. (5) The circuit court had jurisdiction of the cause of action stated in plaintiff's original petition. R. S. 1899, sec. 1674; Sess. Acts. 1903, page 140; Monks v. Strange, 25 Mo. App. 16. (6) When an attorney's fee is one item involved and for which plaintiff seeks a judgment, the attorney's fee is not costs within the meaning of the above statute defining the jurisdiction of circuit courts. Bay v. Trusdell, 92 Mo. App. 380; St. Louis v. Meintz, 107 Mo. 611; 2 Words and Phrases, 1634. (7) The sum demanded, exclusive of interests and costs, shall determine the jurisdiction. "The test of jurisdiction in such cases is the aggregate amount of damages prayed for, and not the amount of damages prayed for in a single count." Vineyard v. Lynch, 86 Mo. 685; Fickle v. Railroad, 54 Mo. 225; Clothing Co. v. Watson, 168 Mo. 143; Funk v. Funk, 35 Mo. App. 246; Posthlewaite v. Ghislin, 97 Mo. 424; Liese v. Meyer, 143 Mo. 556. (8) Is the second count of plaintiff's amended petition a change of the cause of action stated in his original petition? "But the penalty is not the cause of action. The penalty is a result from the cause of action. The cause of action is the wrong done for which the penalty is a punishment as well as recompense for the injured party's loss. Mc-Grew v. Railroad, 87 Mo. App. 225; Hill v. Mo. Pac., 49

Mo. App. 534; Castleman v. Castleman, 184 Mo. 440; Scovill v. Glasner, 79 Mo. 449; Carter v. Baldwin, 107 Mo. App. 228; Powell v. Co., 104 Mo. App. 718; Liese v. Meyer, 143 Mo. 556; Holt County v. Cannon, 114 Mo. 519. (9) Plaintiff's instructions are correct. App. Abst. 57; Trauerman v. Lippincott, 39 Mo. App. 488; Buckley v. Knapp, 48 Mo. 161; State v. Jones, 78 Mo. 281; 19 Am. and Eng. Ency. Law (2 Ed.), 623; Bussey v. Railroad, 13 Fed. 331; 5 Am. and Eng. Ency. Law (2 Ed.), 169. (10) Plaintiff is entitled to recover exemplary damages. 35 Am. and Eng. R. R. Cases, 525, 527; Avinger v. Railroad, 13 Am. St. 720, 724; 12 Am. and Eng. Ency. Law (2 Ed.), 7; Goddard v. Railroad, 2 Am. St. 45; s. c., 57 Maine 202; Arnold v. Co., 76 Mo. App. 182. (11) Railroad corporations, like other people, are liable for exemplary damages. Canfield v. Railroad, 59 Mo. App. 354; Haehl v. Railroad, 119 Mo. 343. Exemplary damages have been allowed for the following causes of action in the following cases: Trespass; Gildersleeve v. Overstolz, 90 Mo. App. 518. Assault and battery; Johnson v. Bedford, 90 Mo. App. 43. False imprisonment; Monson v. Rouse, 86 Mo. App. 97. Forcible entry and detainer; Wamsganz v. Wolff, 86 Mo. App. 205. Libel; Jones v. Murray, 167 Mo. 25. Injuries by vicious dog; Fragstern v. Windler, 2 Mo. App. 598. Malicious prosecution; McGarry v. Mo. Pac., 36 Mo. App. 340.

JOHNSON, J.—Action against a common carrier to recover damages for an alleged wrongful refusal to receive and transport a hog offered by plaintiff for shipment. Plaintiff had judgment in the sum of two dollars compensatory and $63 exemplary damages and defendant appealed. The suit was brought in the circuit court and in the petition plaintiff alleged in substance that he brought the animal properly crated and in good condition, to defendant's station at Trenton and

requested defendant's agent to ship it to Green City, another station on defendant's line some forty miles east of Trenton, and that defendant not only wrongfully refused to receive and ship the property but intentionally committed the wrong in an insulting manner. Actual damages were laid at two dollars which plaintiff prayed to have trebled under the provision of section 1140, Revised Statutes 1899, and plaintiff further prayed for the recovery of a reasonable attorney fee, to-wit, fity dollars, to be taxed as costs as provided by said section of the statutes. The right to the remedy invoked was based on the violation of the statutory duty imposed on common carriers by section 1082, Revised Statutes 1899.

In the answer filed by defendant to this petition among other defenses the jurisdiction of the court over the subject-matter was attacked on the ground that the amount of plaintiff's demand was but six dollars—the treble damages claimed—that the attorney's fee claimed was no part of the demand but should be regarded as costs, and therefore the court had no original jurisdiction over the cause, the amount involved being less than fifty dollars. [Sec. 1674, R. S. 1899.] Plaintiff then filed an amended petition containing two counts. In the first the cause of action stated was the same as that pleaded in the original petition, but the amount of the attorney's fee was changed to $150. In the second the facts stated were a repetition of those stated in the first count and in the original petition, but the cause was founded on a breach of the common-law duty of defendant as a common carrier and the relief sought included compensatory damages amounting to two dollars and exemplary damages laid at $150. The right to recover damages of the latter class was predicated on the allegation that defendant "contemptuously, insolently, wrongfully and maliciously refused" to receive and ship the property.

Defendant moved to strike out the second count on the grounds, among others, that the cause pleaded therein differed essentially from that pleaded in the original petition and therefore was not a proper amendment and that as the court had no jurisdiction over the subject-matter of the original action, none could be acquired through an amendment thereof. This motion was overruled and defendant filed answer to the merits in which the objection to the jurisdiction of the court was repeated. In the instructions given on behalf of plaintiff the first count was abandoned and judgment was recovered on the second count alone. The objections made in the motion to strike out were reiterated in the motions for a new trial and in arrest of judgment, and are urged by defendant as grounds for a reversal of the judgment.

In a civil action for the recovery of money, whether such action be founded upon contract or tort or be for the recovery of a penalty given by statute, the circuit court has no jurisdiction over the cause unless the sum demanded, exclusive of interest and costs, exceeds fifty dollars. [Sec. 1674, R. S. 1899; Barnes v. Railway, 119 Mo. App. 303; Bradley v. Asher, 65 Mo. App. 589; Bay v. Trusdell, 92 Mo. App. 377.]

In the original action the amount of the damages claimed by plaintiff when trebled fell below the jurisdictional sum, but it is argued by plaintiff that section 1140 of the statutes enabled him to recover a reasonable attorney's fee in an action founded on a violation of the duty imposed on common carriers by section 1082, and notwithstanding the statute provides that the attorney's fee shall be taxed and collected as a part of the costs in the case, such fee is in the nature of a penalty for the wrong committed, and being a part of the penalty he is entitled to recover, necessarily must be considered as a part of his demand. From this premise the conclusion is drawn that the penalty demanded by plaintiff included

his actual damages trebled, and his attorney's fee, and as these two amounts aggregated $56, the circuit court had original jurisdiction over the cause. In Perkins v. Railway, 103 Mo. 52, the Supreme Court decided that a statutory provision similar to that under consideration should not be condemned as being special legislation, and observed, "the statute in question is as much a police regulation as is the double-damage section, and the attorney's fee may be lawfully imposed as a penalty for the violation of the law." And in Briggs v. Railway Company, 111 Mo. 168, the same court again treated the attorney's fee as a part of the penalty imposed for the wrongdoing, saying that "the fact the amount is taxed as costs and is called an attorney's fee does not change its real character," and held the defendant was entitled to a jury trial in the assessment of the value of the legal services. But in the later case of Paddock v. Railway, 155 Mo. 524, the Supreme Court, following the decision of the Supreme Court of the United States in the case of Gulf, etc., Railway v. Ellis, 165 U. S. 150, held the provision for the recovery of an attorney's fee in an action of this character to be in conflict with the fifth amendment to the Constitution of the United States, and therefore void, and overruled the Perkins case. In thus holding that the legislative attempt to burden a certain class of unsuccessful litigants with the payment of their adversaries' attorney's fees was an attempt to deprive them of their property without due process of law, and to single them out as the subjects of class legislation, the view previously entertained that the attorney's fee should be treated as a part of the penalty imposed for the violation of a statutory duty, necessarily had to be abandoned. To compel the losing party to a suit to pay his opponent's attorney's fee doubtless should be regarded as the imposition of a penalty, but it is a penalty inflicted for resisting the payment of a legal demand and in no sense

belongs to the remedy provided as a redress for the wrong upon which the demand is founded. When plaintiff's cause of action accrued, under the statute, the only penalty he was entitled to receive was his treble damages. Being compelled to bring suit to enforce his demand, the contingent penalty of an attorney's fee which the statute attempted to give him, regardless of the constitutional question involved, should not be considered a part of the demand inuring to him from the tort committed, and therefore should not be included in the amount necessary to confer jurisdiction upon the circuit court.

The term "the sum demanded exclusive of interest and costs," as employed in section 1674, obviously refers to the amount of the remedy sought under the cause asserted and excludes incidental matters such as costs or other expenses incurred in the prosecution of the suit. We have not overlooked our decision in the case of Bay v. Trusdell, 92 Mo. App. 377, where we treated the attorney's fee as a part of the sum demanded, but there the action was on contract, and by the express agreement of the parties, defendant obligated himself to pay a specific amount as attorney's fees and thus made that sum as much a part of plaintiff's demand as was the principal of the obligation. So interest, where it is a matter of contract between the parties, is an integral part of the demand and would be included in the jurisdictional sum except for the prohibition of the statute which does not extend to attorney's fees made a part of the obligation by express contract. The conclusion reached in that case was right and is consistent with our present view that the "sum demanded" by plaintiff within the meaning of section 1674, was the amount of his treble damages, and as this was less than fifty dollars the circuit court had no jurisdiction over the cause pleaded in the original petition.

The next subject for consideration is the effect of

the amendment to confer jurisdiction on the circuit court over the subject-matter. No objection is made by defendant to the sufficiency of the averments in the second count of the amended petition to support a recovery of exemplary damages had the cause pleaded in that count been made the subject of the original action, nor is it contended had that been done that the amount demanded as exemplary damages could not be included in the sum necessary to confer jurisdiction in the circuit court, but it is asserted by defendant that as the cause pleaded in the original petition on its face disclosed the want of jurisdiction in the court over the subject-matter, jurisdiction could not be conferred by an amendment and certainly not by the substitution of an entirely new cause. It may be conceded that when the facts pleaded in the petition disclose a cause of action of a nature or class without the jurisdiction of the court in which the action is brought, no amendment should be permitted to confer jurisdiction since such amendment to state a jurisdictional cause would necessarily state one of an entirely different nature from that amended and therefore would not be an amendment but a substitution of one cause for another.

But where the facts pleaded present a cause of a nature belonging to the jurisdiction of the court, and the lack of jurisdiction over the particular action results solely from the insufficiency of the amount of the relief demanded, and the facts pleaded would sustain a money recovery in an amount falling within the jurisdiction, an amendment of the petition that merely so expands the amount of the recovery sought is not a change of the cause of action and should be permitted.

Granting that as a general rule a statutory cause cannot be amended into one under the common law, or vice versa, without changing the cause, this rule under the liberal policy of our code should not be arbitrarily applied and does not obtain where the same evidence

will support both petitions and the same measure of damages may be applied to both. [Ross v. Land Co., 162 Mo. 317; Liese v. Meyer, 143 Mo. 547; Scovill v. Glasner, 79 Mo. 449; Purdy v. Pfaff, 104 Mo. App. 331.]

Under the code the petition is required to contain "a plain and concise statement of the facts constituting a cause of action." [R. S. 1899, sec. 592.] In actions *ex delicto* the wrong alleged is the cause of action. The "demand of the relief to which the plaintiff may suppose himself entitled" is no part of the cause but is the assertion of a right resulting to the plaintiff therefrom. [Liese v. Meyer, supra; McGrew v. Railway, 87 Mo. App. 250; Hill v. Railway, 49 Mo. App. 1. c. 534.] This being true the selection by the pleader of one of two or more concurrent remedies should not serve to classify the action, and his substitution by amendment of another available remedy for the one originally invoked of itself constitutes no change of the cause.

The facts alleged in the original petition were repeated in the second count of the amended petition. They show that defendant wrongfully refused to receive plaintiff's property for transportation and that the wrong was oppressive, intentional and therefore malicious. Such wrong was actionable either at common law or under the provision of section 1082 of the statutes. The common-law remedy entitled plaintiff to recover his actual damages for the wrongful refusal to receive his property and punitive damages for defendant's intentional and malicious commission of the wrongful act, while the statutory remedy to which plaintiff supposed himself entitled provided a penalty of treble damages for the wrongful refusal and no additional relief where the offense was aggravated by willfulness, wantonness or malice. Though it is apparent plaintiff in order to recover punitive damages was compelled to prove a state of facts not required to be shown to authorize a recovery of the statutory penalty, he made those facts con-

stitutive of the cause pleaded in the original petition and thereby placed himself in a position to obtain a recovery of such damages by amending his demand without change of the cause of action. The amendment contained in the second count was proper and invested the court with jurisdiction over the subject-matter.

Passing to the merits of the case, plaintiff testified that he hauled the pig to defendant's station and went to the window where defendant's agent transacted business with the public and saw that officer inside the office engaged in business with two other men. After waiting several minutes he interrupted with his business and this is his account of what occurred: "Finally I broke into the conversation and told them I wanted to ship this pig by freight . . . and the agent kind of turned his head around and he says, 'Have you got a man to go with him.' I says, 'What! a man to go with a pig forty miles,' and I says, 'I wouldn't have to send a man with him; he is out here properly crated . . . and all ready to go; all you have got to do is to set him on the car, and he will go all right,' and then he said he wanted a man to go with him to feed and water him and I says, 'That pig will go a week without feed and water. He's a long hungry fellow and he don't need anybody to go with him to feed or water him on the freight train for forty miles.' Then he said that Milan was a division and that he would have to lay over there that night. This was about four o'clock in the afternoon. . . . I says, 'Well that wouldn't hurt him to lay over there,' and I says, 'If that is all the reason why you don't want to take him, why, I'll take all risks of his laying over there at Milan.' Now that is the first time there was anything said about releasing of risks and when I said that I would take all chances about the pig, about the feed and water for one day if that was all, for the lay-over at Milan, the agent very contemptuously and very angrily and very impudently says,

'You would be the first one to kick if anything should happen.' Of course that raised my Irish a little and I says, 'Then the question is, I am here ready to pay the freight on this pig whatever it is, and I says are you going to take him' and he says, 'No, not unless you release from all damages and liabilities and sign a release for all liabilities,' and I says, 'Well, we'll see,' and I walked away." Plaintiff was told that the reason the pig would be detained a whole day in Milan was because the eastbound freight train was delayed and would not arrive at the devision station in time to connect with the freight train which ran east from that place, but denies that he was informed of the cause of the delay. The agent admits he told plaintiff he would be the first to complain if the pig was damaged, but denies that he spoke or acted in other than a courteous manner and says he insisted on plaintiff signing a contract releasing the carrier from all liability because he knew and so informed plaintiff that the pig would be held over a day in Milan and if unattended would likely suffer from lack of food and water. The animal was a boar intended to be used as a breeder and plaintiff says, and in this is uncontradicted, that he would have suffered no damage from being without food and water during the anticipated delay.

In the absence of the existence of an exceptional cause, such as the act of God, the public enemy, unavoidable accident or an abnormal and unanticipated inrush of business which will prevent the performance of its common-law duty to shippers, a common carrier has no right to refuse to receive and transport property offered for shipment, where such property is in good condition and properly prepared for shipment and belongs to a class properly subject to carriage by such carrier, nor has the carrier any right to impose on the shipper, against his will, any limitation of its common-law liabil-

ity as a condition upon which it will receive and carry his property. )

The common-law liability of a carrier is that of an insurer, but where the subject of transportation is a living animal, the carrier is not liable for damages resulting solely from the natural vices or propensities of the animal, nor from its lack of vitality to withstand the hardships incident to the ordinary course of transportation. [Brown v. Railway, 18 Mo. App. 568; Potts v. Railway, 17 Mo. App. 394; Hance v. Express Co., 48 Mo. App. 179; Hutchinson on Carriers, sec. 218.]

The carrier is bound to provide proper facilities, both for the carriage of the animal and to protect it against serious injury from the want of food and water. [Hutchinson on Carriers, sec. 322.] And where the shipper refuses to send along a caretaker with the shipment, the carrier should observe ordinary care to attend to the necessary wants of the animal and for such services may make a reasonable charge. If the animal sustains injury during the journey, from hunger or thirst, the carrier will only be held liable for the resulting damages where it is made to appear that it negligently failed to perform such duty, and the burden of proof is on the shipper to show the existence of such negligence. [Crow v. Railway, 57 Mo. App. 135.] But the fact that the animal will require food and water during the journey, and the refusal of the shipper to furnish an attendant, will not warrant the carrier either in refusing to receive the shipment nor in exacting an agreement from the shipper to release it from liability. It must receive and carry the property without conditions restricting its common-law liability if the shipper so demands.

Conceding for argument, though we do not so hold, that the cause of the unusual delay this shipment would have encountered was unavoidable, and that in notifying plaintiff of its existence defendant would have been excused in law from liability as an insurer for damages

resulting therefrom, defendant was not justified in refusing to receive the shipment, because plaintiff would not agree to release it from all liability, whether for damages resulting from such delay or from other causes. It should have received the shipment, and if the pig required food and water during its detention at Milan, should have exercised reasonable care to discover and supply its wants. Defendant's conduct was wrongful under its own statement of the facts, and plaintiff was entitled to recover the actual damages he sustained in consequence thereof.

If the wrong was intentionally committed by defendant's agent, or if acting in good faith he mistakenly supposed he was justified in refusing the shipment under the circumstance, but was insultingly rude in his refusal, in either event a proper case was presented for the awarding of exemplary damages to plaintiff. That the act was wrongful is apparent and that the agent knew he was doing wrong is a fair inference from plaintiff's evidence. The remark, "You would be the first one to kick if anything should happen," if spoken jocularly would perhaps be entirely harmless, but considering that plaintiff and the agent were strangers and plaintiff was making a request within his legal rights, to say it in an angry and contemptuous manner was very insolent and might have proven sufficiently offensive to provoke a breach of the peace. The business of common carriers is with the general public and their agents and servants should be required to observe the rules of ordinary courtesy in dealing with patrons, and where they disregard this duty and in the commission of torts add insult to injury, exemplary damages should be inflicted upon them. The court properly submitted this issue to the jury and the verdict is sustained by substantial evidence.

We have considered other points made and find that the case was fairly tried. The judgment is affirmed. All concur.