LIBBY et al., etc., Appellants, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Respondents.

St. Louis Court of Appeals, March 23, 1909.

1. COMMON CARRIERS: Negligence: Delay in Shipping: Jury Question. It is the duty of a railroad company as a common carrier to transport live stock committed to it for shipment within a reasonable time, and where there is unusual delay in shipment and consequent loss to the shipper by reason of a decline in the market or shrinkage of the cattle, the railroad company is liable for such damage. In an action in such case, where the delay in shipment was unusual, the question of whether the defendant was negligent in failing to transport in a reasonable time was a question for the jury.

2. ———: ———: Injury to Animals: "Proper Vice." A carrier, as an insurer of goods committed to it, is liable for injuries inflicted upon animals which it undertakes to carry unless such injuries occur through the "proper vice" of the

animal; and this is true whether the animal be injured through human agency or otherwise, provided the injury is not the result of the act of God, the public enemy, or the fault of the shipper.

3. ——: ——: ——: ——: **Burden of Proof.** Where an animal shipped on a railroad is injured in the shipment, in an action for the injury the burden is on the shipper to show that the injury did not occur through the proper vice of the animal, but slight proof of negligence is sufficient to make out a prima-facie case. Where the animal shipped was shown to be in good condition when loaded on a carrier's train and to have been bruised and crippled when delivered at destination, and it was further shown that there was long delay beyond a reasonable time in shipment, this was sufficient to make out a prima-facie case that the animal received the injury from other agencies than its proper vice.

4. ——: **Contract: Action Ex Delicto.** A shipper is always at liberty to sue upon a special contract of shipment or to sue *ex delicto* upon the obligation of a carrier raised by law. The fact that he has a contract stipulating the obligation which the law imposes does not prevent such an election of remedies.

5. ——: ——: **Notice of Damage.** In an action for damage to live stock caused by delay in shipment, where the bill of lading provided that notice of loss or injury to the live stock should be made within a given time, this provision did not require such notice where the damage was caused by *delay* in shipment and loss of *market*.

6. ——: ——: ——: **Action Ex Delicto.** Where a shipper sued *ex delicto* for injury to cattle caused by delay in shipment, he was not required to prove notice of the damage, provided by the bill of lading, was given to defendant in a reasonable time or that notice was waived, where the defendant did not plead a want of notice or a waiver of the same.

7. ——: ——: **Negligence.** A common carrier can not contract against liability on account of its negligence. Whether a stipulation in a contract of shipment which required that notice of loss be given by the shipper to the carrier within a given time is a limitation of the carrier's common law liability and whether such stipulation, if a limitation upon the common law liability, is valid when supported by a consideration, are questions discussed but not decided.

Appeal from Wayne Circuit Court.—*Hon. Jos. J. Williams,* Judge.

REVERSED AND REMANDED.

*Munger & Hay* for appellants.

*James F. Green* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued to the plaintiffs because of the defendant's breach of duty in respect of its obligation as a common carrier. At the conclusion of all the evidence, the court directed a verdict for the defendant and plaintiffs prosecute the appeal.

The petition is in two counts. The first count alleges substantially that plaintiffs delivered to the defendant thirty head of steers at Williamsville, Missouri, in good condition, for the purpose of transportation over the defendant's railroad to the National Stock Yards at East St. Louis, Illinois; that the defendant accepted the consignment for the purpose of transportation in due time and with proper care; that being unmindful of its obligation in that behalf, defendant negligently delayed the transportation so as to consume thirty-one hours therefor, when eight or ten hours was a reasonable time; that by reason of the defendant's negligent and unreasonable delay, the cattle were not placed upon the market on the day they should have been, and were greatly depreciated in weight and appearance by the long delay without food or water. It is averred the market, on the character of cattle involved, was considerably lower on the day on which the defendant delivered the cattle than the day prior, on which they should have been delivered in due course. In the second count of the petition, it is stated substantially that plaintiffs delivered the thirty head of cattle referred to in good condition to the defendant at Williamsville, for transportation to the National Stock Yards at East St. Louis, Illinois; that the defendant accepted the consignment, and thereby assumed the obligation to safely transport and de-

liver the cattle in good condition at the place of destina-
tion; that wholly disregarding its duty in that behalf
and in violation of the law, defendant so carelessly and
recklessly transported the cattle as to maim, skin, bruise,
wound and injure all of them and especially cripple and
injure one of said steers so as to materially depreciate
the value of all. The answer was a general denial.

On the part of plaintiffs, the evidence tended to
prove that plaintiffs delivered the cattle referred to, to
the defendant and defendant accepted the shipment for
transportation from Williamsville, Missouri, to the Nat-
ional Stock Yards at East St. Louis, Illinois, the con-
signment being in care of E. C. White & Company, a
commission firm located at East St. Louis, Illinois. The
cattle were all in good condition at the time of the con-
signment. The testimony is to the effect that eight or
ten hours is the usual and reasonable time for like ship-
ments from Williamsville to the National Stock Yards
at East St. Louis, Illinois. It appears in this particular
instance the defendant delayed the shipment several
hours at Piedmont, Missouri, and again for several hours
at De Soto, and again at St. Louis, Missouri, with the
result that they did not reach their destination for the
market on the day intended. The time consumed in the
transportation was thirty-one hours instead of the usual
eight or ten hours. The delay was such as to preclude
the cattle from reaching the market on the day after their
shipment, as was anticipated by the plaintiffs. They
actually reached the stockyards about eight o'clock that
night, too late for the market of that day, and plaintiffs
were therefore compelled to place and sell them upon
the market of the following day. The market on the fol-
lowing day, or the day on which the cattle were sold,
ranged considerably lower on this class of cattle than
on the day previous. This fact induced considerable
loss to the plaintiffs on the shipment. It is also shown
that the cattle were greatly gaunted and suffered con-
siderable shrinkage from the long time in transit with-

out food and water. There is no evidence whatever tending to support the averments in the second count of the petition with respect to all the cattle being maimed, skinned, bruised, etc. It appears, however, that one of the steers referred to in the second count was so maimed, bruised and crippled in some manner during the transit as to practically destroy its value; that is to say, instead of selling at its reasonable value of forty or fifty dollars, it was depreciated because of its crippled condition so that it was sold for five dollars, which amount was its reasonable value after being crippled. These facts certainly made a prima-facie case for the plaintiffs. Under the law, it was the duty of the defendant to transport the stock within a reasonable time and where it appears unreasonable delays occurred without just cause therefor, as in this case, the question of defendant's negligence in respect of its obligation to transport the stock within a reasonable time, should be referred to the jury. [Sloop v. Wabash R. R. Co., 93 Mo. App. 605; Leonard v. C. & A. Ry. Co., 54 Mo. App. 293; 5 Amer. and Eng. Ency. Law (2 Ed.), 450.] If the plaintiffs suffered a loss by reason of the decline in the market and shrinkage of their cattle, and this loss was induced because of the defendant's negligent delay in the transportation, it is a loss for which the defendant should make compensation. [Sloop v. Wabash R. R. Co., supra.]

Now touching the matter of the one steer which was so crippled as to depreciate its value; that is to say, the crippled steer which the plaintiffs sold for five dollars, because of its injuries. It is a general rule that carriers of live stock are liable like other common carriers, as insurers for loss or injury to the stock entrusted to them for transportation with the exception that they are not liable for injuries occurring through the "proper vice" of the animal being carried, and not through any negligence on the part of the carrier. [5 Amer. and Eng. Ency. Law (2 Ed.), 443; Cash v. Wabash Railroad Company, 81 Mo. App. 109; Hance v. Pacific Express Com-

pany, 48 Mo. App. 179.] It appears the crippled steer was in good condition when received by the defendant at Willamsville. Defendant's obligation of insurer imposed upon it the duty to deliver it in good condition at the point of destination, unless its injuries were inflicted through its own proper vice or inherent vicious propensities, or other exceptional causes. In view of the exception to the defendant's obligation as insurer with respect to the proper vice of the animal, the burden of proof is upon the plaintiffs to show that the steer received its injuries through the defendant's negligence. It has been said the burden is upon the plaintiff to show the animal was injured through some human agency. [Hance v. Pacific Express Co., 48 Mo. App. 179.] And the statement seems to be approvingly quoted in Cash v. Wabash R. R. Co., 81 Mo. App. 109, 114. We believe such to be an inaccurate statement of the law for the reason the defendant's obligation of insurer imposed upon it the duty to deliver the animal in good condition at destination, excepting for the intervention of an act of God, the public enemy, the proper vice of the animal, or the act or fault of the owner. [5 Amer. and Eng. Ency. Law (2 Ed.), 233, 234, 235, 243.] This being true, it is immaterial whether the animal was injured by a human agency or otherwise, for if it were not injured as a result of the act of God, the public enemy, its proper vice, or the fault of the owner, the carrier is liable. Those risks and those only are taken by the shipper. To illustrate: suppose, while in possession of the carrier for transportation, the animal was killed by the onslaught of a lion or panther which had escaped from a menagerie. In such case, we apprehend no one would deny the liability of the carrier under its obligation as insurer to make compensation for the loss thus entailed by the beast and entirely without the intervention of any human agency whatever. Therefore, in view of the exception as to proper vice, the true rule is that the burden rests with the plaintiff to show prima facie the

animal received its injuries through some other cause than its proper vice, and on this score, very slight proof of negligence is sufficient to transfer to the carrier the duty of coming forward with evidence to the contrary. [5 Amer. and Eng. Ency. Law (2 Ed.), 469, 472.] And it is not necessary to show such fact by express and positive testimony. The cause of the injury may be established from collateral facts and circumstances affording a reasonable inference of negligence, identically as other facts may be established in a suit at law. [Cash v. Wabash R. R. Co., 81 Mo. App. 109; Hance v. Pacific Express Co., 48 Mo. App. 179.] There is no direct testimony whatever as to how the crippled steer was injured. It appears to have been in good condition when delivered to the defendant and severely bruised, skinned, and otherwise crippled when arriving at the point of destination. When these facts are considered together with the fact that thirty-one hours were consumed in transit for a shipment which should have been made in eight or ten hours and that such injuries were unusual, or at least not usually incident to a shipment with due care, we believe the question of how the steer was injured, should be referred to the jury. That is to say, the facts above referred to are sufficient for a prima facie showing that the steer received its injuries from an agency other than its proper vice, and it may be, through the negligence of the defendant. This view has been heretofore expressed by both this court and the Kansas City Court of Appeals. [Hance v. Pacific Express Co., 48 Mo. App. 179; Cash v. Wabash R. R. Co., 81 Mo. App. 109.] Of course, the defendant may rebut this prima facie showing on the part of the plaintiffs by giving evidence tending to prove the animal received its injuries as a result of its inherent vicious propensities and not from negligent or careless conduct on the part of the defendant. However, by showing the facts above referred to, the plaintiffs satisfy the law with a prima facie case, and it then becomes the duty of the defendant to come for-

ward with its evidence to overcome such prima facie showing. From what has been said, it appears the facts given in evidence made a case for the plaintiffs and that the court erred in directing the jury to find for the defendant.

The record discloses that there was a special contract between the parties with respect to the shipment in question. The provisions of this contract were not invoked in the answer. The suit does not predicate on the contract. Instead, it is bottomed upon the defendant's unrestricted liability at common law; that is, an action in tort on the obligation raised by law. During the progress of the trial and while the plaintiffs were giving their evidence, something was said concerning the special contract. The court thereupon remarked that if there was a special contract between the parties, then plaintiffs could not recover in this action *ex delicto* for a breach of the obligation of the common carrier imposed by law. Plaintiffs did not introduce the contract. After the defendant had introduced the same in evidence, the court directed a verdict for it. This direction of a verdict may have been on account of the view expressed by the court to the effect that plaintiff could not recover in this action sounding in tort when it appeared an express contract existed. This expression indicated an erroneous view of the case, for the shipper is always at liberty to exercise his option and sue either *ex delicto* upon the obligation of the carrier raised by law, or declare upon the special contract between the parties, as he may choose. The mere fact that he has taken a stipulation assuring the obligation which the law imposes, does not compel the shipper to pursue the contract. He may pursue either remedy. [Clark v. Railway, 64 Mo. 440, 446; Wernick v. Railway, 131 Mo. App. 37, 109 S. W. 1027; 3 Ency. Pl. & Pr., 818.] It may be the court directed a verdict for defendant for the reason that it did not appear notice of the plaintiffs' claim had been presented in accordance with

a stipulation in the special contract. One of the provisions of the special contract is to the effect that as a condition precedent to any damages for loss or injury to live stock, the shipper will give notice in writing of the claim therefor to some agent of the carrier, etc., within a time therein limited. It does not appear in the record whether any such notice was given. Nor does it appear that it was not given. There is nothing tending to show a waiver of the stipulation referred to. In fact, the evidence is entirely silent as to whether this provision of the contract was complied with or whether it was waived. The judgment of the trial court in directing a verdict is sought to be sustained here upon this stipulation contained in the shipping contract. It is clear the judgment cannot be sustained on this ground. The stipulation requires notice of loss or injury "to live stock." These words do not comprehend such damages as the plaintiffs may have sustained from the decline in the market price of cattle. On a fair construction of the words employed, notice is required only touching loss or injury to the cattle. In this case, the words include no more than the injury to the cattle and the shrinkage they suffered. [See Leonard v. Railway, 54 Mo. App. 293, 302, 303; Klass Com. Co. v. Wabash R. R. Co., 80 Mo. App. 164, 169.] It is argued the stipulation referred to is a condition precedent to the plaintiffs' right to recover, at least in so far as the loss or injury to the cattle is concerned, and that notice of the claim should have been given in accordance therewith. In this connection, it is said that it devolved upon the plaintiffs to show either that the notice was given or that its requirement was waived. Therefore, nothing whatever appearing in the record on the question, the judgment of the trial court should be affirmed. The question as to whether or not it devolves upon the plaintiffs to prove the notice had been given or waived, as a condition precedent to their right of recovery, is to be determined by reference to the nature of the action. It is true, the authorities usually

speak of such stipulations as conditions precedent, and it is no doubt true, when the suit is on the special contract, the burden is on the plaintiffs to show that the notice required was either given or waived. This is in keeping with the rule of law generally on such questions, to the effect that one declaring upon a contract must show full performance of its conditions on his part. However this may be, when the action is in tort, as here, plaintiffs make out their case by showing the shipment in good condition, unreasonable and negligent delay, and the negligent injury to the stock and decline of the market. In an action *ex delicto,* such as this one, plaintiff is not required to introduce the bill of lading, but may and must prove a breach of the carrier's obligation imposed by law. Therefore he is not required to prove either that he gave the notice mentioned, or that it was waived. [Brown v. St. L. & S. F. Ry. Co., 135 Mo. App. 624; McNichols v. Express Co., 12 Mo. App. 401; 1 Hutchinson on Carriers (3 Ed.), sec. 447.] See also 3 Hutchinson on Carriers (3 Ed.), sec. 1332. At any rate, in this character of action, it is certainly not essential for the plaintiff to show they had given the notice, unless the stipulation is pleaded or otherwise interposed by the defendant in such a manner as to indicate a non-observance of it is relied upon as a defense. [The Westminster, 116 Fed. 123; Nordlinger v. U. S., 127 Fed. 680, 683; Hatch v. Railway, 107 N. W. (N. D.) 1087.] It therefore appears as a special contract was not relied upon by the plaintiffs for a recovery, it was not incumbent on them to show that notice was either given or waived.

In view of the fact that the cause will probably be retried under an amended answer invoking this stipulation of the special contract, it may not be out of place to comment upon a question suggested by the record; that is, as to the competency of enforcing the stipulation at all on the facts in proof, in view of the recent decision of our Supreme Court in George v. C. R. I., etc., Ry. Co., 214 Mo. 551, 113 S. W. 1099, 1100. From

what appears it is obvious that if plaintiffs recover at all, they must recover for the consequence of the defendant's negligence. It is certainly true, as a general proposition, that the courts will not enforce any kind of a stipulation which operates to limit the common law liability of a common carrier to answer for the negligence of itself or its servants. And this is true even though such stipulation be supported by a separate consideration, independent of that given for the transportation. A common carrier is not permitted to contract against its negligence. To permit it to thus escape from the consequence of its negligence, is against the policy of the law, for the reason it encourages lax attention to duty. [McFadden v. Mo. R. R. Co., 92 Mo. 343; Dawson v. C. & A. Ry. Co., 79 Mo. 296; 4 Elliott on Railroads (2 Ed.), sec. 1498, 1500; 5 Amer. and Eng. Ency. Law (2 Ed.), 308.] However this may be, the books are replete with cases elsewhere, and in this State too, for that matter, following Rice v. Railway, 63 Mo. 314, and Dawson v. Railway, 76 Mo. 514, in which stipulations of the character here involved have been enforced, notwithstanding the loss or damages sued for resulted solely from the carrier's negligence. It appears the courts have sustained and enforced such stipulations in cases where the damages sued for resulted from negligence, on the ground that such stipulations do not operate as a limitation upon the common law liability of the carrier. The authorities argue that instead of being a limitation upon the liability at common law, such stipulation amounts to no more than a reasonable regulation touching the shipper's right or a regulation going to the remedy, and as such, they are enforced even in negligence cases, if otherwise reasonable and just in the particular circumstances of the case. [Rice v. Railway, 63 Mo. 314, 319; Dawson v. Railway, 76 Mo. 514; Express Co. v. Caldwell, 21 Wall. 264, 88 U. S. 264, 269; Hatch v. Railway (N. D.), 107 N. W. 1087; 4 Elliott on Railroads (2 Ed.), sec. 1512; 5 Amer. and Eng.

Ency. Law (2 Ed.), 321 and note, also 325.] On the same theory, that is, on the theory that such stipulations do not operate a limitation upon the common law liability of the carrier, the authorities generally declare and sustain the proposition that no separate consideration, independent of that given for the transportation, is essential to render the stipulation valid. Those and many other authorities assert the doctrine that notwithstanding the carrier's duty to receive and transport, it is reasonable and just that it should be allowed to interpose such stipulation in regulation of the shipper's right, to the end that the shipper should be required to present his claim before the avenues of investigation are foreclosed. It is said it prevents the great injustice which may be perpetrated by the practice of presenting stale demands. Thus viewed, it is a reasonable regulation only on the shipper and does not operate to limit the liability of the carrier, for the carrier is liable to respond in the full measure required by law if the shipper has asserted his claim in due time, as required by the stipulation. On this reasoning of the law, it is said no independent consideration is essential to its validity. [Hatch v. Railway Co., 15 N. D. 490, 107 N. W. 1087; Crow v. Ry. Co., 57 Mo. App. 135, 142; 5 Amer. and Eng. Ency. Law (2 Ed.), 300; Moore on Carriers, 305.] For reasons from which such conclusion may be deduced, see also Express Co. v. Caldwell, 21 Wall. 264, 88 U. S. 264; Rice v. Railway, 63 Mo. 314; Wabash R. R. Co. v. Black, 11 Ill. App. 465.

However all of this may be, our own Supreme Court has recently decided (See George v. Railway Co., 214 Mo. 551, 113 S. W. 1099, 1101) that such stipulation operates as a limitation upon the common law liability of the common carrier and that it is invalid unless supported by a separate consideration, independent of that given for the transportation. In that case, so far as pertinent here, the matter under consideration was a stipulation requiring notice of the claim to be given within a cer-

tain time, as in this case. The question stated by the court and to which the learned judge addressed the reasoning of the opinion is: "We understand the proposition of the counsel now to be that no consideration is necessary to support such a contract; in other words, the railroad company may charge the full tariff rate and yet *limit its common law liability* in the manner now claimed." After reasoning thereon, the judgment of the court was given contrary to the proposition stated. The propositions of law to be deduced from the opinion and the judgment of the Supreme Court given upon the question in decision as above stated, are two: first, that such stipulation operates as a limitation on the common law liability of the common carrier; and second, that such stipulation must be supported by an independent consideration for the reason it is a limitation upon the carrier's common law liability. With the doctrine that such stipulation operates a limitation of the common law liability thus affirmed and established by the superior court of the State, a grave question essentially arises for future consideration as to the force and effect to be accorded such stipulations, even though supported by a sufficient consideration in those cases, such as this one, where the loss or damage results from the negligence of the carrier, against the result of which it is said the carrier may not contract upon any consideration. Now we are not unmindful of the multitude of cases sustaining such stipulations where the loss occurred through the negligence of the carrier. In fact, we have pointed out some of them in the opinion supra. But what we are mindful of at this time is that no common carrier is permitted to limit its liability to respond for the consequences of its negligence, and that such stipulations are to be treated henceforth by our Supreme Court as limiting the common law liability of the common carrier. Without deciding the question, we may suggest it would seem that if such stipulation operates as a limitation upon the common law liability of the carrier, then it may not be enforced at all

in those cases where the cause of action accrues through the carrier's negligence, for the reason the carrier is not permitted to relieve itself from such consequences by contract, even on a separate and independent consideration. We offer these suggestions to counsel for their consideration during the interim. The court reserves judgment on the question for the reason it is unnecessary to pronounce it in this case.

We have considered the contract thus far for the reason that the judgment of the trial court is sought to be sustained thereon. However, we are of the opinion that this contract was not properly in the case, for the reason it was not invoked in the answer. As stated before, the answer was merely a general denial. This being true, the contract was erroneously admitted in evidence over the objection and exception of plaintiffs' counsel. Our statute (sec. 604, R. S. 1899) authorizes a general or specific denial of the material allegations of the petition and requires, second, the statement of any new matter constituting a defense thereto. There can be no doubt that the stipulation of the contract respecting notice, introduced new matter into the case which should have been pleaded in the answer. Under the general denial, the defendant can show such facts only as disprove the facts alleged in the petition. If the defendant relies upon matters in confession and avoidance of the action, they should be brought forward by a competent plea in the answer. [3 Ency. Pl and Pr., 858.] If the defendant rests its defense upon any fact which is not included in the allegations necessary to support plaintiff's case, it must set out such facts in its answer, according to the statute, in plain and concise language, otherwise it will be precluded from giving evidence of it at the trial. [Northrup v. Miss. Valley Ins. Co., 47 Mo. 435; State ex rel. Demuth v. Williams, 48 Mo. 210; Nelson v. Wallace, 48 Mo. App. 193; 3 Ency. Pl. and Pr., 558.] In keeping with the doctrine of the code last referred to, it has been

137 App.—19

frequently declared that non-compliance with the stipulation of a shipping contract requiring notice, as in this case, is a matter of defense to be affirmatively pleaded in the answer. [Hatch v. Railway, 107 N. W. (N. D.) 1087; Westcott v. Fargo, 61 N. Y. 542; Central Vermont, etc., Ry. Co. v. Soper, 59 Fed. 879. See also The Westminster, 127 Fed. 680; 3 Hutchinson on Carriers (3 Ed), sec. 1345, 1332.] The defendant not having invoked in its answer the stipulation of the special contract touching the matter of notice, it was not competent to consider it in evidence over plaintiffs' objection and exception. The mere fact the action sounds in tort does not render the special contract incompetent as a defense. If properly pleaded, it is entirely competent to be considered for what it is worth. [Oxley v. St. L., K. C. & N. Ry. Co., 65 Mo. 629.]

For the reason the special contract is not properly in the case, its validity, and such other provisions as are sought to be invoked, will not be further noticed. The judgment will be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.