EUGENE G. DEAN, Respondent, v. TOLEDO, ST. LOUIS AND WESTERN R. R. COMPANY, Appellant.

St. Louis Court of Appeals, May 3, 1910.

1. COMMON CARRIERS: Carriage of Freight: Perishable Goods: Presumption of Good Condition: Evidence. Goods delivered in good order to an initial carrier are presumed to continue so until they get into the possession of the final carrier, even though they are perishable.

2. ———: ———: Injury in Transit: Damages: Difference in Market Price at Destination.   In an action against a carrier for damages sustained en route to a shipment of goods, the for damages sustained en route to a shipment of goods, an instruction on the measure of damages setting two markets, that at the point of shipment and that of the destination, is erroneous.

3. ———: ———: ———: ———: Freight Charges. A shipper, whose peaches were injured in transit, was liable in an action against the carrier for damages, for at least the freight charges on so much of the carload as he received, though not liable for charges on the damaged part of the peaches.

4. JUDGMENT: Res Judicata: Pleading. A plea of *res judicata*, which does not plead a final judgment, but one merely of dismissal and for costs, is insufficient.

5. ———: ———: Nonsuit. A judgment of nonsuit, taken either voluntarily or by the action of the court, is a mere dismissal of the cause, and not a judgment that can be pleaded in bar of any subsequent action between the same parties on the same subject-matter.

6. COMMON CARRIERS: Carriage of Freight: Injury in Transit: Evidence: Admissions by Agent. In an action against a railroad for injury to goods in transit, a letter from defendant's freight agent to plaintiff, rejecting the latter's claim for damages and referring to the icing of the car as shown by an agent's reports, was not hearsay, but was admissible as an admission by the agent in the course of his duty.

7. INSTRUCTIONS: Refusal: Not Relevant to Issues. An instruction, not relevant to any issue raised, is properly refused.

8. COMMON CARRIERS: Carriage of Freight: Injury in Transit: Pleading: Defenses. In an action against a railroad for injury to peaches in transit, defendant, if it wished to avail itself of the defense that the contract of shipment only required the icing of the car at a certain point designated by plaintiff, should have invoked the provision of the contract by which plaintiff was claimed to have directed the icing of the car, and alleged obedience to his directions.

9. APPELLATE PRACTICE: Waiver of Error. Errors in the trial of a cause may be waived by counsel for appellant on the oral argument in the appellate court.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*James R. Van Slyke* and *George P. Greenhalgh* for appellant; *Clarence Brown* and *Chas. A. Schmettau* of counsel.

(1) The rule that goods delivered in good order to an initial carrier, are presumed to continue so until

they get into the possession of the carrier which delivers them at the place of destination in a damaged condition cannot apply to highly perishable property. Flynn v. Railroad, 43 Mo. App. 424; Hull v. St. Louis, 138 Mo. 618; Lin v. Railroad, 10 Mo. App. 125; Crouch v. Railroad, 42 Mo. App. 248; Sweatland v. Railroad, 102 Mass. 276.   (2)   The carrier is not responsible for loss of goods where shipper has been negligent, unless said carrier's negligence is the sole and direct cause of said loss.   Pratt v. Railroad, 102 Mass. 557; Ross. v. Railroad, 49 Vt. 364.   (3)   In case of a loss of goods the market value must be determined at one market and apply to goods in good condition, at that one market Heib v. Railroad, 16 Mo. App. 362; Hendrick v. Railroad, 170 Mass. 44.   (4)   Plaintiff must prove specific acts of negligence alleged, by a preponderance of the evidence. Chitty v. Railroad, 148 Mo. 75; McManamee v. Railroad, 135 Mo. 447; Terry v. Railroad, 162 Mo. 96; Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 414; Coupland v. Railroad, 61 Conn. 531.   (5)   The court erred in giving instruction No. D-3, for the reasons set forth in specification of error No. 4, and for the further reason that it misled the jury on the question of contributory negligence.   (6)   There was no competent evidence that defendant failed to re-ice car No. 3047. Keff v. Railroad, 32 Kan. 263; Morrison v. Construction Co., 19 Am. R. R. Rep. 312; Express Co. v. Perkins, 42 Ill. 459.   (7)   From the only information obtained from the G. R. & I. R. R., *i. e.,* the way-bill, appellant had a right to rely on a special contract which only called for icing at Frankfort, Ind. Witting v. Railroad, 101 Mo. 631; Otis Co. v. Railroad, 112 Mo. 622; George v. Railroad, 57 Mo. App. 363; Hurst v. Railroad, 117 Mo. App. 25.   (8)   Plaintiff must show not only a market, but also a market value.   Davis v. Railroad, 89 Mo. 340; Nickey v. Railroad, 35 Mo. App. 79.   (9) Plaintiff must prove by the greater weight of the evidence specific acts of negligence alleged.   Milling Co. v.

Lime Co., 122 Mo. 275; Witting v. Railroad, 101 Mo. 631; Galn v. Railroad, 87 S. W. 1015. (10) If the shipper's packing or loading is part of the legal cause of loss of property he cannot recover. Railroad v. Richardson, 41 L. J. & C. P. 60; Barbour v. Railroad, 34 L. T. N. S. 67; Goodman v. Oregon Retc. Co., 22 Ore. 14; Shriver v. Railroad, 24 Minn. 506; Klauber v. Express Co., 21 Wis. 21. (11) The only duty upon appellant, under the contract, was to re-ice at Frankfort, Ind. Clark v. Railroad, 64 Mo. 446; McFadden v. Railroad, 92 Mo. 348. (12) The court erred in refusing to give instruction D-5, because it properly states the law with reference to contributory negligence on the part of the shipper. Snow v. Railroad, 109 Ind. 422; Tuggle v. Railroad, 62 Mo. 425. (13) The court erred in refusing to give the peremptory instruction offered by appellant at the close of plaintiff's testimony. There was no evidence that this car had been iced prior to its arrival at Frankfort, Indiana. (14) *Res adjudicata.* Where there is no dispute that subject-matter was in suit before and where judgment and evidence shows cause must have been heard and determined upon merits, burden is upon party denying estoppel to establish that cause was not heard upon merits. 24 Am. and Eng. Ency. Law (2 Ed.), pp. 833, 834; 2 Black on Judgments, sec. 724; Haseltine v. Thrasher, 65 Mo. App. 334; Best v. Hopper, 3 Colo. 137; Hubbell v. U. S., 171 U. S. 203; Armony v. Armony, 26 Wis. 152; Brothers v. Higgins, 5 J. J. Marsh (Ky.) 658. (15) Expert witness must be properly qualified before he can testify. Wigmore on Evidence, a555-561, and cases therein cited; Simmons v. Carrier, 68 Mo. 416. (16) This specification of error is based on the same grounds and is covered by the same rule and authorities as specification of error No. 15. (17) This specification of error is based on the same grounds and is covered by the same rule and authorities as specification of error No. 15. (18) The court erred in refusing to exclude the testimony of respondent's

witness, William Boyce. He absolutely failed to identify the car or the date. (19) The court erred in admitting the letter of Ed Keane, assistant general freight agent of the appellant railroad. This letter is inadmissible because it only amounts to an admission that Keane had heard this statement about icing, which he repeated, and not to an admission of the facts included in it. Lord Trimlestown v. Kemmis, 5 C. L. & F., 749, 780, 784; Stephens v. Vroman, 16 N. Y. 381; Reed v. McCord, 160 N. Y. 330, at p. 341. (20) The court erred in excluding from the evidence the check slip signed by George Meyers. Meyers had implied authority to sign said slip. Benninghoff v. Ins. Co., 93 N. Y. 495; Shackman v. Little, 87 Ind. 187; Star Line v. Van Vliet, 43 Mich. 364. (21) The damages awarded under the so-called verdict are so excessive as to indicate that they were the result of bias and prejudice. Unterberger v. Scharff, 51 Mo. App. 102.

*Frank A. Thompson* for respondent.

(1) The law presumes that the preceding carriers do their duty and "act rightly;"and that the loss occurred on the delivering carrier's line, and this rule is founded not on the nature of the goods carried, but *ex necessitate* the burden is upon the delivering carrier to show positively that the goods came into its possession in a damaged condition. Flynn v. Railroad, 43 Mo. App. 424; Hurst v. Railroad, 117 Mo. App. 25; Crouch v. Railroad, 42 Mo. App. 248; Lin v. Railroad, 10 Mo. App. 125; Beard v. Railroad, 79 Ia. 527; Beard v. Railroad, 79 Ia. 518; Railroad v. Cromwell, 49 L. R. A. 462. (2) The court was clearly right in giving plaintiff's instruction No. 2. (3) The court was clearly right in giving respondent's instruction on the measure of damages, No. 3, in view of the clause pleaded in the bill of lading, basing damage on value of goods at point of shipment. Ruppell v. Railroad, 167 Pa. St. 166;

Davis v. Railroad, 70 Minn. 37; Shea v. Railroad, 63
Minn. 228; Caples v. Railroad, 17 Mo. App. 14; Rome v.
Sloan, 39 Ga. 636; Finley v. Railroad, 9 Am. and Eng.
R. R. Cases 31.   (4)   The court was right in giving in-
struction D-2, and not giving instruction 3.   Beard v.
Railroad, 79 Ia. 527; Beard v. Railroad, 79 Ia. 518;
Holliday v. Railroad, 74 Mo. 159; Railroad v. Crom-
well, 49 L. R. A. 462.   (5)   The court was right in
giving instruction D-3, and in refusing to give appel-
lant's instruction 3.     Authorities supra.     (6)   The
court was clearly right in refusing to give appellant's
instruction D-3 A, because there was an abundance of
evidence that the car contained no ice upon delivery at
East St. Louis.   (7)   The court was right in refusing
to give  appellant's  instruction D-4 A, because: 1.
There was no contract to ice at Frankfort, Indiana,
alone.   2.   Even if there had been such a contract, it
would have been void.   3.   It was not pleaded by de-
fendant.   Phoenix Powder Co. v. Railroad,   101   Mo.
App. 442; Beard v. Railroad, 79 Ia. 527; Beard v. Rail-
road, 79 Ia. 518; Holliday v. Railroad, 74 Mo. 159; Rail-
road v. Cromwell, 49 L. R. A. 462; Oxley v. Railroad,
65 Mo. 629; Clark v. Railroad, 64 Mo. 447.   (8)   The
court properly refused to give instruction of appellant
D-6, because there was evidence of the value of the
peaches at Conklin, Michigan.   (9)   The court was
right in refusing to give instruction 2 offered by ap-
pellant, and giving instruction D-2 in its place.   (10)
The court was right in refusing to give instruction 3
offered by appellant, and in giving instruction D-3 in
its place.   (11)   The court was right in refusing to
give instruction 4 offered by appellant and in giving
instruction D-4 in its place.   (12)   The court was right
in refusing to give appellant's instruction D-5, and in
giving instructions 8 and D-4.   (13)   The court was
right in refusing to give the peremptory instruction
offered by appellant at the close of plaintiff's case.

148 App—28

Authorities cited under point 1. (14) The plea of
*res adjudicata* must fail because it does not distinctly
and clearly appear that the former dismissal was on
the merits; neither was it, nor could it be, a final judg-
ment upon the merits. Murphy v. Creath, 26 Mo. App.
581; Mumma v. Staudte, 36 Mo. App. 695; Baldwin v.
Davidson, 139 Mo. 118; Sec. 724, art. 7, chap. 8, R. S.
1899; sec. 766, art. 9, chap. 8, R. S. 1899; sec. 768, art.
9, chap. 8, R. S. 1899. (15) Eugene G. Dean was prop-
erly qualified to give expert testimony on icing of cars,
having used them for a great many years. (16) The
court was right in allowing Mr. Dean to testify in re-
gard to the value of the peaches at Conklin, because he
was selling and handling peaches there all of the time.
(17) The court was clearly right in allowing Mr. Dean
to testify that if a car had once been under ice and the ice
gave out the peaches would decay more rapidly than if
they had never been iced at all. (18) The court was
right in refusing to strike out the testimony of Will
Boyce, because he was testifying about this particu-
lar car. (19) The court was clearly right in admitting
a letter of Ed Keane, division freight agent of the de-
fendant company. (20) The court was right in exclud-
ing the check slip signed by little Willie Myers for his
father, George Myers. (21) By the undisputed testi-
mony the damages are capable of exact computation,
and the verdict does not indicate prejudice on the part of
the jury. Heil v. Railroad, 16 Mo. App. 369; Starr,
Harknett & Edmiston Co. v. Railroad, 122 Mo. App. 26.

STATEMENT.—Action for damages to a carload of
peaches, 571 bushels, shipped from the town of Conklin,
Michigan, via the Grand Rapids & Indiana Railway,
the initial carrier, to Decatur, Indiana, where it was de-
livered to the defendant, the shipment made under con-
tract with the initial carrier and the shipper to trans-
port the peaches from Conklin to the city of East St.
Louis, Illinois.

The petition avers the delivery of the peaches, all in good, sound, merchantable order and shipping condition, to the initial carrier, routed for transportation over the line of the initial carrier and that of the defendant, via Decatur, Indiana, to East St. Louis, Illinois, and there to be delivered to the plaintiff, named as consignee thereof. The petition further avers that the carload of peaches was thereafter, in the usual course of business between the connecting carriers, duly transported over the line of the initial carrier to Decatur, where upon their arrival they were delivered to the defendant as a common carrier in like good order and condition as when shipped; that the defendant received and accepted the carload of peaches so consigned and undertook to transport and deliver them at East St. Louis, with due care and within reasonable time, and it is alleged that the defendant carrier did not transport the peaches to their destination within a reasonable time and did not use reasonable and ordinary care for the protection and preservation thereof from injury or damage by heat or decay, in that it failed to properly re-ice said car while it was in its possession and under its control, but so negligently and carelessly conducted itself as a common carrier that the carload of peaches, while in its possession and under its control, became heated, speckled, decayed and damaged and thereby depreciated in market value, to the damage of plaintiff in the sum of $1,072.71, for which amount and interest judgment is demanded.

The answer, after a general denial, avers, first, that whatever damage was sustained was caused by the negligence of plaintiff and his agents directly contributing thereto, in that the peaches had not been properly crated and protected or arranged for safe carriage. For another defense, it is set up that under the bill of lading, given under the laws of the state of Michigan, it is stipulated that no carrier is liable for loss or damage for causes beyond its control, nor for loss or

damage not occurring on its own road, and that what-
ever damage or loss occurred to plaintiff was occa-
sioned by causes beyond the control of the defendant and
not on the defendant's line. It is further averred that
by the contract in the bill of lading above referred to,
it is stipulated that no carrier should be liable in any
event for more than the value of the goods at the time
and place of shipment. It is set out that under the laws
of Michigan, these were valid contracts. As another
defense, it pleads that in an action between these same
parties heretofore pending in the circuit court of the
city of St. Louis, which action was commenced July
11, 1905, after issue had been joined and a jury had
been sworn and the trial progressed, "that after a hear-
ing upon the merits of said suit, and at the close of
plaintiff's testimony, the court dismissed said cause ow-
ing to the admission of plaintiff as to the merits of said
controversy, while said plaintiff was on the witness
stand, said dismissal being made on motion of defend-
ant, which said motion was sustained by the court, and
the court entered an order of dismissal discharging the
jury from the further consideration of said cause, and
entered a judgment of dismissal at the costs of plaintiff,
and further ordered that an execution should issue
therefor." This on the thirty-first of May, 1906. De-
fendant pleads this in bar of the present action.

The reply was a general denial.

The statement of the case by counsel for appellant
is so brief that we will give them the benefit of it by
setting it out verbatim, and it is as follows:

"Eugene G. Dean, respondent, was in the fruit com-
mission business in September, 1902, at St. Louis, Mo.
Both prior and subsequent to September 24th of that
year, the date of arrival at East St. Louis of C. R. L.
No. 3047, the car in question in this case, he had received
cars of peaches from Conklin, Michigan.

"Mr. Dean had purchased all of these peaches at
Conklin while they were on the trees, and when ship-

ping time came around he was not there, but his agent at Conklin, Mr. Fowler, looked after the shipping and hired Mr. McWilliams to do the loading.

"This car, C. R. L. 3047, was loaded partly with crates and partly with baskets. The testimony is conflicting as to the method of loading, although it is undisputed that the baskets were not crated and Mr. McWilliams, Dean's agent for loading, testified:

" 'Q. Now would you say that your method of loading crates and baskets, which you have described, was a suitable method of loading a car that was to go from Conklin, Michigan, to East St. Louis, Ill.? A. I think it was, it was the best that we could do.

" 'Q. What do you mean by that answer? A. The baskets should be crated. They have crates to set the baskets into—then it would not be necessary to set baskets on the edges.'

"Furthermore, there is undisputed testimony that while McWilliams, assisted by Loren Nostrant, was loading C. R. L. 3047, on September 22nd, 1902, at Conklin, Michigan, this car was so severely struck by a freight train switching at said station as to knock Nostrant down and misplace all the baskets, some two hundred fifty, one and one-half feet. Said baskets were then set back, but the only examination made of the result of this collision on the peaches was by merely looking at the tops of the baskets.

"Both Mr. McWilliams and Mr. Fowler asked for a clear bill of lading from Mr. Quartermas, agent of the G. R. &. I. Railroad at Conklin, and said if they did not get it they would put in a claim of damages, and thus, the trainmen would suffer; so in order to protect these trainmen, Mr. Quartermas issued a clear bill of lading.

"Mr. Quartermas further testified that the car was not iced at Conklin, Michigan. Shipping instructions were given by Dean's agent at Conklin under his direction to ice this particular car at Grand Rapids and

Frankfort and the bill of lading contains this direction. This car C. R. L. 3047 left Conklin September 22nd and arrived at East St. Louis at 12:30 p. m., September 24th, and it was agreed between counsel that there was no contention that it was not transported within reasonable time.

"John Isgrig, icing foreman at Frankfort, Indiana, testified that at 9:15 p. m., September 23d, he opened the bunkers of this car and filled them with 2500 pounds of ice at the ice house there.

"This car arrived at East St. Louis at 12:30 p. m., on the 24th. There is some conflict of testimony as to when it was first opened.

"Mr. Dean testifies that it was opened at 7:00 a. m., September 25th, when he himself examined the car, finding the peaches heated and worthless, the temperature of the car warm and not a particle of ice in the ice boxes.

"Robert Stuerman testified that at 12:30 p. m., on September 24th he examined the ice boxes and found them one-third full and that the car was not opened until 5:00 p. m., September 26th.

"There was testimony that there was 571 bushels of Alberta peaches in this car; that the market value at East St. Louis was $2 a bushel, and that these peaches were sold for $193.65.

"There was expert testimony that if peaches have once been under ice and then the ice gives out, peaches under this condition, will spoil quicker than peaches that have never been iced before; that where the car is heated and hot it is very hard to get it cooled off again, and if the car is iced and the ice is allowed to run down in the car and the car gets heated and hot, it takes but a short time to rot the goods enough to make them worthless. As the ice melts, it becomes more compact, and the ice will not melt as fast when a car is standing on the siding, as it will when it is moving."

In addition to this statement, we find that an examination of the several abstracts which have been filed in the case discloses the following facts:

It appeared by the evidence in this case that this carload of peaches was to be carried in a refrigerator car and was loaded in one. The only evidence to show that, at the time the peaches were loaded in the car, the car had been iced, is contained in a letter of date January 7, 1903, from the division freight and passenger agent of the defendant, written to the plaintiff on the letter head of the defendant, returning to plaintiff the papers that he had presented to the railroad company (defendant) in support of his claim for damages, amounting to $1072.71. In this letter the division freight and passenger agent writes: "The movement of this shipment has been investigated and it is shown car 3747 C. R. L. was iced empty at Grand Rapids, Michigan, and forwarded to Conklin, Michigan, for loading September 19th. The shipper began loading car September 20th, and loading was finished Monday, September 22nd, and car forwarded same day. The loaded car was re-iced at Grand Rapids and again at Frankfort, Indiana, and arriving at East St. Louis 12:30 p. m., September 24th, being but forty-eight hours in transit, Conklin to East St. Louis. Our agent East St. Louis reports that the ice boxes were about one-third full and the temperature of the car when opened was all that could be expected." The claim was consequently returned by the agent to plaintiff rejected. When this letter was offered in evidence, it was objected to by defendant as incompetent, immaterial and irrelevant under any issue in this case and because it appears that it refers to a different car from the one involved in this suit, that being No. 3047, C. R. L. The objection was overruled and plaintiff, testifying as a witness, said that the writer of it was the division freight and passenger agent of the defendant and that he (plaintiff)

had received this letter from him in regard to this claim.

It also appears in evidence that the peaches were packed in baskets and the baskets set in tiers and the tiers fastened together by slats or ropes, and there was evidence tending to show that that was the customary, although not the only, way of loading and shipping peaches. There was testimony on the part of plaintiff tending to show that when the car was opened at East. St. Louis by plaintiff's employees, it was found to be hot,—as one witness said, when they opened the door, "a blast of heat" struck them in the face. On the part of the defendant there was evidence tending to show that the car was the proper temperature when it was opened at East St. Louis, and that the ice boxes in the car were from one-fourth to one-third full, and that this was to be expected and was the usual result of carriage for the time this freight was on its way. The waybill introduced in evidence calling for re-icing of the car at Grand Rapids and Frankfort, Indiana, and it was testified to by witness and also noted on the waybill that the car had passed Decatur, Indiana, the 22nd of September and had been iced at Frankfort, Indiana, September 23rd, twenty-five hundred pounds of ice being put in it at that time. There was testimony on the part of plaintff that the value of the peaches in the car at the time he examined them in St. Louis was $193.65; that was what they had been sold for and that, witness testified, was their value in East St. Louis, in the condition in which they had arrived at East St. Louis and had been delivered to him. There was testimony to the effect that these were what are called Alberta peaches and that in good, sound condition at that time at East St. Louis, they were worth two dollars a bushel, which for the 571 bushels, would be $1142. There was testimony to the effect that their value at the time of shipment at Conklin, Michigan, was $1.50, which for the 571 bushels would be $856.50. There was no testi-

mony as to their value at Conklin in their damaged condition. The waybill before referred to shows that the charges for icing were two dollars and for freight, ninety dollar's, a total charge of ninety-two dollars. While there is no positive evidence that this was the amount of freight charges paid by the plaintiff, there is testimony given by defendant's witnesses to the effect that plaintiff was not allowed to have access to the car nor was delivery made to him of the consignment until he had paid the charges, as, according to these witnesses, the plaintiff "was not on the credit list" of the defendant. It was agreed by counsel on each side "that the only allegation of negligence on which the issues were to be drawn was with reference to the re-icing of the car, and there was no contention that it was not transported within a reasonable time."

At the close of the case the court gave a number of instructions for each side and several of its own motion. We will only notice such instructions or parts thereof that are either specifically objected to or the refusal of which is assigned as error. In the first instruction, given at the instance of the plaintiff, the court told the jury that if they found from the evidence that the plaintiff delivered to the Grand Rapids & Indiana Railway Company, the certain carload of peaches, "all in good, sound, merchantable order and shipping condition and properly loaded into C. R. L. car 3047, billed, marked and consigned for transportation over the line of said Grand Rapids & Indiana Railway Company, and that of the defendant company, the court instructs you that you may presume in the absence of evidence to the contrary that the said Grand Rapids & Indiana Railway Company did its full duty, and threafter, in the usual course of business, duly transported said car over its line and duly delivered it to the defendant at Decatur, Indiana, in like good order as when shipped, and if you believe and find from the evidence that said defendant received and accepted said car of peaches at

Decatur, Indiana, so billed, marked and consigned, and if you further find that the said carload of peaches, by reason of its perishable nature, required for its protection and safe carriage a refrigerator car provided with iceboxes or bunkers for holding ice to keep the contents of the car cool in warm or hot weather, and that said cars were in common and general use by the railways of the country known to and used by the defendant as a common carrier at the time of this shipment, which cars required the use of ice to render them effective when so employed, then the court instructs you that it was the duty of the defendant company, as a common carrier, to keep the ice boxes or bunkers of the car in suit, at all times during transportation over its line, and until delivery at East St. Louis, Ill., reasonably filled with ice in the usual and customary manner and to the extent which you shall find from all the evidence in the case was reasonably required and customarily used for the care and protection of such fruit under all the facts and circumstances of this case. And the court instructs you that if you find from all the evidence in this case that the defendant company, while the said car of peaches was in its possession during transportation and until delivery at East St. Louis, Ill., failed to keep the ice boxes or bunkers of the car in suit filled with ice in the usual and customary manner and to the extent which you shall find from all the evidence in the case was reasonably required and customarily used for the care and protection to such fruit, under all the facts and circumstances in this case, and you further find that, as a direct and proximate result of said failure to ice said car as aforesaid, the said peaches became damaged and declined in value, then you will find in favor of the plaintiff and against the defendant."

The second instruction given at the instance of plaintiff told the jury that if they found that the peaches were not properly loaded into the car, yet if they found that the failure of the defendant to prop-

erly re-ice and keep the car re-iced as outlined in the previous instruction was the cause of the damage to the peaches, they should find for plaintiff.

The third instruction told the jury that if they found in favor of plaintiff, "the measure of his damages shall be determined by you by the market value, as shown by the evidence, of the car of peaches in suit at Conklin, Mich., in the condition in which it was shipped at such time as you find from the evidence it was shipped, less the market value of the car of peaches in suit at the time it was delivered in East St. Louis in its condition as delivered there, and such further amount as you may find plaintiff for freight charges on said car."

Of its own motion the court gave three instructions. The first one, marked "D 2," was to the effect that the burthen of proof rested on plaintiff to prove by a preponderance or greater weight of evidence that defendant "failed to properly re-ice the car mentioned in the evidence while in its charge and before delivering it to the plaintiff, and that damage resulted to said shipment by reason of the failure to properly re-ice said car. And if you believe the plaintiff has failed to prove these matters by a preponderance or greater weight of evidence, then you are instructed to find your verdict for the defendant."

The second instruction, marked "D 3," given by the court of its own motion, was to the effect that if the jury found from the evidence that the peaches were negligently packed in the car by plaintiff or his agents or shippers, and that the damage to said peaches was caused or contributed to by the careless and negligent manner in which the peaches were packed and arranged, "then, even though you may find the defendant guilty of negligence, plaintiff cannot recover for such damage unless you are able, from all the evidence, to determine the amount of the damage that resulted to said peaches by reason of the careless and negligent manner in which

they were packed and arranged in said car, and also the amount of damage, if any, occasioned by the negligence of the defendant in failing to properly re-ice said car, if you find from the evidence it did so fail."

The third instruction given by the court of its own motion, marked "D 4," told the jury that if they found that while the car was being loaded at Conklin, it was struck by another train of cars of the Grand Rapids & Indiana Railway Company, and by reason of this collision the peaches in the car or any part thereof were displaced or tumbled over and damaged, then the jury were instructed that plaintiff could not recover for any such damage, even if the jury found from the evidence that the defendant was guilty of negligence in failing to re-ice the car, and that damage resulted from that negligence, "yet if you are unable to separate the damage, if any, to said peaches resulting from said collision and the damaged condition, if any, resulting from said negligence on the part of the defendant, you are instructed that plaintiff is not entitled to recover and you will find your verdict for the defendant."

Defendant duly excepted to the giving of these instructions.

At the request of the defendant the court gave two instructions. The first was that there is no evidence in the case of any negligence in failing to transport the carload of peaches within a reasonable time. The second was that the bill of lading provides that the property should be removed by the consignee within twenty-four hours after its arrival at destination and that if the property was not removed within that time, it thereafter remained in the car at the sole risk of the owner, and if the jury found that the peaches were not removed by the plaintiff within twenty-four hours after he was notified of their arrival at East St. Louis, and that damage resulted after the lapse of the twenty-four hours, plaintiff could not recover for any such damage, and the verdict should be for the defendant.

These were all the instructions given.

The defendant asked eight instructions, all of which were refused. One was to the effect that there is no evidence in the case that the defendant failed to properly re-ice the car and that the jury would disregard this allegation of negligence in arriving at a verdict. Another was as to the veracity and credibility of the witnesses, and told the jury that in considering the testimony of any witness, "they can take into consideration the interest of said witness in the results of this litigation." The third request was for an instruction to the jury that by the terms of the contract under which the peaches were shipped, defendant was only required to re-ice the car at Frankfort, Indiana, and if they found from the evidence that the defendant complied with this contract "and filled the ice boxes of the car at Frankfort, Indiana," they should find for defendant. Another instruction asked was that if the jury found a verdict for plaintiff they could only return a verdict for nominal damages. By another one the court was requested to instruct the jury that plaintiff must prove by a preponderance or greater weight of evidence that defendant failed to re-ice the car "at Frankfort, Indiana, and damage resulted to said shipment by reason of the failure to re-ice said car at Frankfort, Indiana," and if plaintiff failed to prove this by the preponderance or greater weight of evidence, they must find for defendant. Another instruction asked was to the effect that if the peaches were negligently packed and arranged in the car by plaintiff or his agents and that the damage was caused or contributed to by the careless and negligent manner in which they were packed and arranged, plaintiff could not recover. Another one asked the court to instruct the jury that if they found that while the car was being loaded at Conklin, Mich., it was struck by another car of the Grand Rapids & Indiana Ry. Co., and that in consequence of that the peaches or a part of them were displaced or tumbled over and damaged, then

the plaintiff could not recover for any such damage, although they might find that defendant was guilty of negligence, "in failing to re-ice this car at Frankfort, Indiana, and that damages resulted from said negligence," yet if they were unable to separate the damage to the peaches resulting from the collision and the damaged condition resulting from failure to re-ice the car, plaintiff could not recover. The final instruction asked. was to the effect that the defendant is not liable for any damage caused or occurring while plaintiff's shipment was not on the line of defendant's railroad, and if they found that the alleged damaged condition of the peaches was caused by the collision while the car was at Conklin or was caused or contributed to by plaintiff or his agent by reason of the negligent manner in which they were packed and arranged in the car, they should find for defendant.

In addition to these instructions, at the close of the evidence, the defendant asked a direction for a verdict on all the evidence in the case. This was refused, defendant duly saving exceptions to the refusal of this as well as to the refusal to give the other instructions above referred to. The jury returned a verdict in favor of plaintiff and assessed his damages at $936.89. Motion for new trial was filed and pending its determination plaintiff remitted $182.04. The motion for new trial was accordingly overruled and judgment entered in favor of plaintiff for $754.85. In due time defendant prayed for and perfected an appeal to this court, saving exceptions to the adverse rulings of the court.

REYNOLDS, P. J. (after stating the facts).—The first proposition made, among the twenty-one points in the very elaborate brief of the learned counsel for appellant, is that the rule that goods delivered in good order to an initial carrier are presumed to continue so until they get into the possession of the carrier which delivers them at the place of destination in a damaged

condition, cannot apply to highly perishable property. Counsel cite in support of this position, Lin v. Terre Haute & Ind. R. Co., 10 Mo. App. 125; Crouch v. Louisville & Nashville Ry. Co., 42 Mo. App. 248; Flynn v. St. Louis & S. F. Ry. Co., 43 Mo. App. 424; Hull v. St. Louis, Trustee, 138 Mo. 618. None of these cases support this contention of an exception to the general rule. Referring to the last one, Hull v. St. Louis, it appears that it was an action for compensation for personal services rendered by plaintiff for defendant in and about the appraisement of certain property, which it holds in trust as a charitable fund to furnish relief to all poor emigrants and travelers coming to St. Louis bona fide to settle in the West. We are unable to conjecture any reason for its citation in this case. Lin v. Railroad, was a suit for damages to a trunk in transit. Crouch v. Railroad, was for damages for injury to horses. Flynn v. Railroad, is for injury to household goods. We are at a loss to understand how any of these Missouri cases can be said to have injected an exception in favor of highly perishable property to the rule which they all announce as the one governing in this State, namely, that goods delivered in good order to an initial carrier are presumed to continue so until they get into the possession of the final carrier. This court distinctly held, in Hurst v. Railroad, 117 Mo. App. 25, the opinion in the case written by Judge Goode, that "as there was no proof that the fruit was already damaged, the presumption, in the absence of evidence on the issue, would be that defendant delivered it in good condition to the last carrier and the damage occurred on its line." Judge Goode cites in support of this, Crouch v. Railroad and Flynn v. Railroad, supra. So that this case in effect holds that the same rule of presumption applied, whether the freight carried was perishable, as peaches or apples, or non-perishable, as in the case of household goods or the like. In support of their proposition, counsel have referred us to the case

of Swetland v. Boston & Albany R. Co., 102 Mass. 276. It is true that that case was one involving a right to recover damages alleged to have been sustained by the freezing of a carload of apples carried over two roads, and it is true that the court held in that case that there was no evidence in it authorizing a jury to find that the apples were delivered to the final carrier before they were frozen. But this is not stated in the Massachusetts case as an exception to the rule which the court seems to recognize as pertaining to all shipments, and all that can be said of it is that if it applies to shipments generally or to perishable freight in particular, it is not in line with our Missouri decisions.

The proposition is also made by counsel for appellant, that in case of loss of goods, the market value must be determined in one market to apply to goods in good condition at that one market. Counsel cite in support of this Heil v. St. L., I. M. & S. Ry. Co., 16 Mo. App. 363. In that case it is distinctly held that a stipulation in the bill of lading, that the cost of the property at the point of shipment shall govern in case of loss, does not refer to damage or deterioration while in transit, and that the measure of damages for the injury of goods while in transit is the difference between the reasonable market value of the goods at the point of destination when they should have arrived and their real value there in their damaged condition. In Caples v. Louisville, etc., R. R. Co., 17 Mo. App. 14, under a like stipulation in the bill of lading as in this case, it was held that the measure of damage is the difference in value at the place of shipment. But by this instruction the court set two markets, that at the point of shipment and that at the point of destination. This instruction is erroneous. Complaint is also made to that part of this instruction which allows the jury to include in the damage, "such further amount as you may find plaintiff for freight charges on said car."

This should not have been given. Plaintiff was liable for at least the freight charges on so much of the carload as he received, if freight charges are to be considered. He was not liable, however, for freight charges on the damaged part of the goods. If the measure of damage was the value of the peaches in the East St. Louis market, that value in the East St. Louis market would generally be the cost at point of shipment, plus the freight and charges of carriage, plus any increase in value, so that in no case should the freight be added to the East St. Louis value.

Another proposition strenuously argued and elaborately briefed by the learned counsel for appellant is on the plea of *res adjudicata.* It is sufficient to say of this that in the first place, it is not properly pleaded, as no final judgment is pleaded, the judgment as pleaded being merely a judgment of dismissal and for costs, and in the next place the record introduced in evidence shows in itself that it was a judgment of dismissal, by direction of the court, it is true, but not on a verdict or finding as on a trial before the court or the jury. That is to say, there is no final judgment finding for the defendant on the issue joined. Practically, the judgment of record and as pleaded, is of the same effect as if plaintiff had been forced by the ruling of the court to take a nonsuit, and whether he takes that voluntarily or is forced to take it by the action of the court in either case, it is a mere dismissal of the cause and not a judgment that can be pleaded in bar of any subsequent action between the same parties on the same subject-matter.

Much stress is laid upon the alleged error of the court in admitting in evidence the letter from the freight agent of the defendant to the plaintiff, which we have set out practically in full in the statement of the case. The objection made to this is that it is hearsay and as it is the only evidence in the case of the fact that the car was iced when loaded, that, if it had been excluded,

it left the plaintiff without any testimony whatever on this very vital proposition. That would be true, but we do not think that this letter and the statements in it come within the class of hearsay testimony; on the contrary, it is a distinct admission of a constitutive fact by a recognized agent of the defendant, made in the line of his duty and in the performance of his official work.

Serious complaint is made of the instructions as given and the refusal of those asked by the defendant. We have given the substance of them and see nothing either in those given or in those refused to the prejudice of the defendant, except the one as to the measure of damages. Those given are substantially correct and properly cover the issues and those refused either had been covered by those already given by the court, either at the instance of the plaintiff or of its own motion, were framed in such language as prevented the court from giving them, or were outside the issues joined in the pleadings.

One of the propositions most insisted on is that the court below erred in refusing the third instruction requested by defendant, that the contract under which the peaches were shipped only required the defendant to ice the car at Frankfort, Indiana, and if the jury found that had been done, defendant had complied with its contract and was entitled to a verdict. The answer contained these defenses: First, a general denial, second, a plea of contributory negligence on the part of plaintiff, his agents and servants in the loading of the peaches; third, that the bill of lading provided every service performed in hauling the peaches should be subject to the conditions of the bill of lading and one condition was no carrier should be liable for losses beyond its control or occurring beyond its own line; that the loss in question occurred from causes beyond defendant's control and not on its line; fourth, that the contract of shipment provided no person should be liable in any event for more than the value of the goods at the time

of shipment and that claims for loss or damage should be promptly made in writing to the agent at point of delivery or no carrier should be liable in any event; that no such claim was served on defendant at point of delivery; fifth, the plea of former adjudication. It will be seen that the answer did not plead any defense based on a condition of the contract by which plaintiff himself directed defendant to re-ice the car only at Frankfort, Indiana, or reserved the right to control the icing. This defense not being pleaded and no issue being raised to which the third requested instruction would be relevant, it was rightly refused for that reason. If defendant wished to avail himself of such a defense, it should by its answer have invoked the provision of the contract by which plaintiff is said to have directed the icing of the car and have alleged obedience to his direction. [Halliday v. Railroad, 74 Mo. 159.]

On the argument, counsel for defendant in open court waived the point made in the brief as to the instruction on the measure of damages so that that is no longer in the case. We do not think the judgment should be reversed as excessive, after the remittitur entered by plaintiff. Wherefore, as all the points raised on the appeal, except the one on the measure of damages, and that one waived by the defendant, have been resolved against defendant, the judgment will be affirmed. All concur.