R. E. FUNSTEN DRIED FRUIT & NUT CO., Respondent, v. TOLEDO, ST. LOUIS & WESTERN RAILROAD CO., Appellant.

St. Louis Court of Appeals, February 6, 1912.

1. COMMON CARRIERS: Partnership: Liability of Carriers. Where several carriers associate themselves together as partners for the business of carriage for hire, accepting a single sum as the freight rate from a shipper, and participate together in the profits and losses of the business, they are jointly and severally liable for a negligent breach of the carrier's duty; and this is true whether they operate under a trade name as a partnership, or not.

2. ————: ————: ————. Where two or more carriers form an association to transport freight under a trade-name, and in

Fruit & Nut Co. v. Railroad.

such name contract with a shipper to carry his freight for a single sum, and divide the freight rate by an arrangement between themselves, they are to be treated as partners, though it does not affirmatively appear that they divide both the profits and losses of the business; and they are jointly and severally liable to a shipper for the breach of a carrier's duty by any of such carriers.

3. ———: ———: ———: Negligence: Bill of Lading: Stipulations for Exemption from Liability Void. A stipulation in a bill of lading, issued by an association' of several carriers, formed for the transportation of freight, that the association and the carriers shall be exempted from loss occasioned through change of weather or heat, is without force, where damage to a shipment, caused by heat, results from the negligence of any of the carriers, since a carrier may not relieve itself from the obligation resulting from its own negligence.

4. ———: Damage to Shipment: Negligence: Burden of Proof. A shipper declaring on the negligence of a carrier must prove the charge as laid, as negligence will not be presumed, though it may be inferred from collateral facts.

5. ———: ———: Negligence: Contributing Cause: Question for Jury. A carrier is not liable for such damages as may result solely from an inherent infirmity in the goods in its care; but where its negligence conduces to set an inherent infirmity in the goods in motion, causing damage, it is liable.

6. ———: ———: ———: ———. Whether damages to shelled walnuts during transportation occurred solely from an inherent infirmity, so as to relieve the carrier from liability, or were induced by the carrier's negligence as a contributing cause, so as to make the carrier liable, *held*, under the evidence, for the jury.

7. ———: ———: ———: Delay in Transportation: Inference. While mere delay in transporting a shipment, standing alone, is not evidence of negligence, extraordinary and unusual delays at different points on the route, when other shipments of the same carrier are passing along, are circumstances sufficient to afford a strong inference that the carrier neglected to perform its obligation to exercise diligence in transporting the shipment within a reasonable time.

8. ———: ———: ———: ———: ———: Burden of Evidence. Where a shipper has shown collateral facts and circumstances sufficient to suggest a reasonable inference of neglect on the part of the carrier in failing to transport a shipment within a reasonable time, the law casts the burden on the carrier to prove the facts which may explain its otherwise seeming default.

Fruit & Nut Co. v. Railroad.

9. ———: ———: Delay in Transportation: Sufficiency of Evidence. Whether a carrier of perishable freight was guilty of negligent delay in transporting the freight *held* for the jury.

10. ———: ———: ———:· Proximate Cause. Whether negligent delay of a carrier in transporting freight was the proximate cause of the damage complained of *held*, under the evidence, for the jury.

11. ———: ———: ———: Measure of Damages. The measure of damages for injury to freight during transportation is ordinarily the difference between the market value of the goods, if sound, and the market value, after the injury, at the point of destination, with interest from the time the goods should have been delivered, less the freight charges due.

12. ———: ———: ———: ———. A stipulation in a bill of lading of perishable freight, that the amount of any loss shall be computed at the value of the freight at the place and time of shipment, is valid, and will be enforced; and where the bill of lading contains such a stipulation, it is error to authorize the jury to award as damages the difference between the value of the freight, as delivered at the point of destination, and the value of the freight, had it been delivered without negligence.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer,* Judge.

REVERSED AND REMANDED.

*Robert & Robert* for appellant.

(1) The ground of plaintiff's action is negligent delay. There was no evidence to sustain that ground. Conceding that there was evidence of delay in the transportation, there was no evidence that such delay was caused by negligence, and for aught that appears in the record the delay may have been unavoidable. Negligence is not shown by mere proof of delay; there must be something more, and the burden is on the plaintiff. Decker v. Railroad, 149 Mo. App. 534; ·Otrich v. Railroad, 134 S. W. 665; Clark v. Railroad, 138 Mo. App. 424; Haase v. Railroad, 143 Mo. App. 42; Hahn v. Railroad, 141 Mo. App. 453; Wernicke v.

Railroad, 131 Mo. App. 52; Ecton v. Railroad, 125 Mo. App. 223; Wright v. Railroad, 118 Mo. App. 392; McCrary v. Railroad, 109 Mo. App. 569. This law was clearly stated in instruction 2, requested by defendant, which the court refused to give, and which should have been given. (2) Instruction 2 for plaintiff is a mere abstract proposition of law and by it the court defined negligence, and from it the jury must have concluded that the court instructed them that mere proof of delay was proof of negligence. It was highly prejudicial and reversible error. This should at least have been supplemented by defendant's instruction 2, which the court refused to give. Hoepper v. Hotel Co., 142 Mo. 388; Bradley v. Railroad, 138 Mo. 307; Meiners v. City, 130 Mo. 286; Bergeman v. Railroad, 104 Mo. 90; Hewitt v. Price, 99 Mo. App. 672; Homan v. Ins. Co., 9 Mo. App. 596. (3) Plaintiff having pleaded a specific act of negligence the burden of proof was upon it to show that the delay caused the damage. It was not enough to show that the goods were in good condition when delivered to the carrier and damaged when received by the consignee. Haase v. Trans. Co., 143 Mo. App. 42; Hurst v. Railroad, 117 Mo. App. 25; Kohr v. Railroad, 117 Mo. App. 302; Milling Co. v. Lime Co., 122 Mo. 275; Allen v. Transit Co., 183 Mo. 411; Witting v. Railroad, 101 Mo. 631; Hamilton v. Railroad, 114 Mo. App. 504; Farr v. Lead Co., 100 Mo. App. 574; Hadley v. Orchard, 77 Mo. App. 141; Larimore v. Railroad, 65 Mo. App. 167; Roscoe v. Railroad, 202 Mo. 588. (4) Plaintiff having sued the original and a connecting carrier alleging that damage was caused by negligence, he was obliged to prove that the loss was due to negligence and to prove which of the carriers negligently caused the loss. Having failed to prove either negligence, or which carrier caused the loss, the instruction in the nature of a demurrer to the evidence should have been sustained. Blackmer & Post v. Railroad, 137 Mo. App. 133,

479; Crockett v. Railroad, 147 Mo. App. 347. (5) Plaintiff's own evidence shows that the damage to the nuts was caused by. the eggs of worms which were in them when they were shipped, which eggs hatched and the worms caused the damage. This was an inherent infirmity of the goods for which a carrier is not liable. Hence, the instruction in the nature of a demurrer to the evidence should have been given and, in any event, instructions 4 and 6, offered by this defendant, should have been given. Creamery Co. v. Railroad, 128 Mo. App. 420; Udell v. Railroad, 13 Mo. App. 260; Wetzell v. Railroad, 12 Mo. App. 599; The Howard v. Wissman, 59 U. S. 231; Lamb v. Parkman, Fed. Cas. 8020; Janney v. The Tudor Co., 3 Fed. Rep. 814; Rixford v. Smith, 52 N. H. 355; Stiles v. Railroad, 110 S. W. 820; Carpenter v. Railroad, 64 Atl. Rep. 252; Hutchinson on Carriers (2 Ed.), secs. 216a, 219. (6) Instruction 6 for defendant should have been given. This instruction the court gave of its own motion as instruction 5, with the added words "within the reasonable time in which freight of this character is usually transported from New York to St. Louis." If worms were the proximate cause of the damage, the railroad was not liable. Hutchinson on Carriers (2 Ed.), sec. 219; The Howard v. Wissman, 59 U. S. 231; cases cited under point 5. (7) (a) Instruction 1 for plaintiff was erroneous as it was not based upon the evidence. There is absolutely no evidence that the nature of the goods was disclosed to the defendant. The bills of lading simply refer to edible nuts and did not disclose the fact that they were shelled. Nor is there any evidence that the carrier knew there were worms in them. The bills of lading recite that the condition of the goods was unknown to the railroad. Common carriers are not chargeable with notice of the character of the freight they transport. Clark v. Railroad, 179 Mo. 66; Parrot v. Exp. Co., 15 Wall. 524. (b) Instructions must be based

upon the pleadings and the evidence. Robertson on Railroad, 152 Mo. 382; Waddingham v. Hulett, 92 Mo. 528; Price v. Railroad, 77 Mo. 508; Haworth v. Railroad, 94 Mo. App. 215; Marr v. Bunker, 92 Mo. App. 651; Day v. Railroad, 81 Mo. App. 471. (c) Instruction 1 for plaintiff is further erroneous as it assumes that mere delay is negligence when it refers to "through negligence in the operation . . . the goods were unreasonably delayed." There is no evidence that they were negligently delayed, hence the instruction is not based upon the evidence. Cases cited under point 1. (8) It is presumed that the goods were in the same condition when delivered to the terminal carrier by a connecting carrier as when received by the latter and "in the absence of evidence on the issue, would be that defendant delivered it in good condition to the last carrier and the damage occurred on its line." The T. St. L. & W. was not the last carrier, the Terminal Railroad was. Hence the demurrer to the evidence should have been sustained. Dean v. Railroad, 148 Mo. App. 447; Hurst v. Railroad, 117 Mo. App. 25; Flynn v. Railroad, 43 Mo. App. 424; Crouch v. Railroad, 42 Mo. App. 248. (9) (a) Instruction 3 for plaintiff should not have been given. There was absolutely no evidence of the market value of the nuts in the condition plaintiff claims they should have been in when delivered in St. Louis. Only New York prices appear in evidence. The bills of lading provided that the amount of damages, if any, should be computed at the place and time of shipment. The evidence refers to two markets, the instruction refers to both. Dean v. Railroad, 148 Mo. App. 428; Caples v. Railroad, 17 Mo. App. 14; Warehouse v. Railroad, 124 Mo. App. 566. (b) This instruction is faulty also in that it assumes that mere delay is negligence when it refers to "an unreasonable negligent delay in transportation," there being no evidence of negligence— only delay was shown. Cases cited under point 1.

*Lehmann & Lehmann* for respondent.

(1) Defendant is liable as a member of the "Traders' Dispatch" for the delay and negligence of the "Traders' Dispatch" whether or not that delay and negligence took place on its line or not. Shewalter v. Railroad, 84 Mo. App. 589; Comm. Co. v. Railroad, 87 Mo. App. 334; Otrich v. Railroad, 134 S. W. 665. (2) There was ample proof of negligence to take the case to the jury. Libby v. Railroad, 137 Mo. App. 276; Anderson v. Railroad, 93 Mo. App. 677; Hamilton v. Railroad, 80 Mo. App. 597; Gilbert v. Railroad, 132 Mo. App. 697; Bushnell v. Railroad, 118 Mo. App. 618. (3) Instruction 2 was as follows: "Negligence is the failure to use ordinary care, which is that care which reasonably prudent men would use under the same or similar circumstances." Felver v. Railroad, 216 Mo. 208.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the negligence of defendant and its associates, who are engaged in the prosecution of the calling of a common carrier under the name of the Traders' Dispatch. Plaintiff recovered and defendant prosecutes the appeal.

It appears the Lehigh Valley Railroad Company, the Chicago & Alton Railroad Company, the New York, Chicago & St. Louis Railway Company and defendant, Toledo, St. Louis & Western Railroad Company and the Terminal Railroad Ass'n of St. Louis are associated together as a common carrier in the name of the Traders' Dispatch, which is an unincorporated association. These several roads contract with shippers, in the name of the Traders' Dispatch, and transport goods from New York to St. Louis by means of through, fast freight shipment. The shipment involved here is a carload of edible nuts, which by its written bill of lading the Traders' Dispatch un-

dertook to transport from New York to St. Louis and deliver to plaintiff, a dealer there. In respect of the instant shipment, the initial line of the association, known as the Traders' Dispatch, is the Lehigh Valley Railroad Company, and the final, or last, carrier, which delivered the goods in St. Louis, is the Terminal Railroad Ass'n, operating between East St. Louis, Illinois, and St. Louis, Missouri, while the present defendant, Toledo, St. Louis & Western Railroad Company, is but an intermediate carrier, connecting with the Terminal Railroad Ass'n at East St. Louis, Illinois.

The suit proceeds against the Toledo, St. Louis & Western Railroad Company alone, as a member of the association, Traders' Dispatch, and because of this it is argued the judgment should be reversed, for the reason it does not appear defendant was guilty of any negligence with respect to the shipment. It is said that, though some of the connecting carriers constituting the association, known as the Traders' Dispatch, were negligent and thus occasioned plaintiff's loss, defendant may not be charged therewith, for unless the evidence shows to the contrary, the presumption of law is to the effect that the goods were delivered in due time and good order to the final carrier, the Terminal Railroad Ass'n. This argument is of no avail as it misconceives the theory of the case entirely, for the suit does not proceed against defendant as a connecting carrier in the sense of that term, but, instead, on the theory that it is liable as a member of the association known as the Traders' Dispatch.

There can be no doubt that where several carriers associate themselves together as partners and prosecute the calling of common carrier for hire, accepting one sum as the freight charge from the shipper, and participate together in the profits and losses of the undertaking as an ordinary partnership between indi-

163 App.—28

viduals does, the several roads are jointly and severally liable to the shipper for the torts of the partnership in respect of that business; that is, for the negligent breach of the carrier's duty, and this is true whether they operate under a trade name as a partnership or not, provided the essential elements constituting the partnership are present. [See Crockett v. St. Louis & H. R. Co., 147 Mo. App. 347, 126 S. W. 243.] It is true, too, that, where two or more railroad companies form an association, as in this case, for the transportation of property, under a distinct trade or partnership name, and in the name of such association contract with a shipper to carry his goods from the point of reception to destination for one sum and divide the freight charge by an arrangement between themselves, they are treated as partners, though it does not appear affirmatively they divide both the profits and losses of the business, for in such case the contract is a through one with a distinct entity, the association, representing all of the roads associated through the implied agency of each. Such association of the several roads form that which, to the shipper, is a continuous line, dealing with him as an entity, through one contract, for one sum, concerning the transportation of his goods over all of the roads to the point of destination as a through shipment. In such circumstances, the several roads so associated together and dealing with the shipper in one name are both jointly and severally liable to him for a breach of the obligation which the law annexes to the calling of a common carrier as if they were partners both in law and fact. [See Wyman v. Chicago & A. R. Co., 4 Mo. App. 35; Rice v. Indianapolis & St. L. R. Co., 3 Mo. App. 27; Block v. Fitchburg R. R. Co., 139 Mass. 308; see also Shewalter v. Mo. Pac. R. Co., 84 Mo. App. 589; White Live Stock Com. Co. v. Chicago, M. etc. R. Co., 87 Mo. App. 330; Crockett v. St. Louis & H. R. Co., 147 Mo. App. 347, 126 S. W. 243.]

The evidence is conclusive here. Indeed, it is conceded that the several railroads above mentioned are associated together and engaged in the transportation of through freight from New York to St. Louis under the name of the Traders' Dispatch. In this name, the Traders' Dispatch, the contract of shipment was made for the transportation of a carload of edible nuts to plaintiff. The bill of lading in evidence reveals the fact beyond question, and it is not denied. As a member of the Traders' Dispatch, defendant is severally liable to respond to plaintiff for the negligent breach of duty of any one of the carriers operating under that name with respect to the shipment, if it entailed loss upon plaintiff, and this is true though it be a mere intermediate carrier and the proof fails to show that it was personally culpable. By entering into the association and participating as a member thereof, defendant assumed the obligation to answer for each and all of its associates, and the presumption cast by the law against the final carrier, which, in some cases, operates to exculpate all prior carriers when nothing more appears than that the goods were damaged in transit, through the negligence of some of them, does not obtain.

But it is argued, though such be true, the court should have directed a verdict for defendant because the record is devoid of evidence of negligence, not only on the part of defendant, but of all of its associates as well. The theory of the case is, that the carload of shelled nuts was injured because of unreasonable delays in transit through being exposed to excessive heat, considering the character of the goods. In one clause of the bill of lading issued by the Traders' Dispatch, it is stipulated that it and all of the carriers, constituting the association, shall be exempted for loss or damage occasioned through change of weather or heat. Of course, this stipulation is without force if the damage resulted from the negli-

gence of the carrier or any of the constituent lines, for a common carrier may not exculpate itself from the obligation to respond for its own negligence, though the contract expressly so provides. In this view, the petition declares upon the negligence of the carrier, and no one can doubt that the onus is on plaintiff to prove the charge as laid, for negligence is a positive wrong and will not be presumed, though it may be inferred from collateral facts and circumstances. [Witting v. St. L. & S. F. Co., 101 Mo. 631, 640, 14 S. W. 743.]

The shipment consisted of shelled English walnuts, grown in France and imported to New York, from whence they were consigned to plaintiff. The nuts had been in cold storage in New York for about three months before being loaded on the car of the Traders' Dispatch. The evidence is abundant that the nuts were sound and in good order when placed in the car in New York, but upon arriving at St. Louis they were found to be wormy and most of them contained moths and fine web. To diminish the loss as much as possible, plaintiff assorted and "picked over" the nuts and a considerable percentage thereof was thrown away as spoiled, while others were placed in cold storage and marketed as merchantable. The evidence is, and, indeed, it is conceded as a fact, that the usual time for the transportation and delivery of freight between New York and St. Louis by the Traders' Dispatch is from three to five days and the particular shipment involved here was fourteen days in transit. The nuts were in boxes and stored in a closed box car which seems to have been delayed, from some causes not shown, at different points along the route. The car containing the nuts left New York on October 1st and was delivered in St. Louis on October 14th. It is shown that the weather was warm, for the thermometer at different points along the route ranged from sixty-two to seventy-five degrees at the

United States weather stations. It is shown in evidence that worms, moths and webs in the shelled nuts originate from a germ or egg deposited in the bloom before the nuts are formed and that this egg or germ of animal life lays dormant throughout and comes to naught unless an exposure to excessive heat is had. If the nuts are kept in cold storage, as is the practice by dealers, the worms and moths never appear, but if exposed for some time to a degree of heat above seventy, animal life is generated therein. The president of plaintiff company testified that if the nuts were subjected to a degree of temperature over seventy-five, the eggs or germ of animal life deposited therein would ultimately hatch or give forth the worm. The same witness said at seventy degrees of heat it would take several months for the eggs to hatch and at eighty degrees, from three to six weeks; at seventy-five degrees, it would require about thirty days to develop animal life from the germ. Because of this, it is argued the damage to the nuts obviously resulted from an infirmity inherent in the goods themselves, for which the carrier is not liable to respond. No one can doubt that the carrier is not liable for such damages as may result solely from an inherent infirmity in the goods in his care no more than is he liable for loss entailed solely by the act of God, the public enemy or the carelessness of the shipper. [See Hutchinson on Carriers (2 Ed.), sec. 216a; Libby v. St. L. I. M., etc. R. Co., 137 Mo. App. 276, 117 S. W. 659.] But though such be true, it is true as well that the carrier is liable to respond for the results of his own negligence, and if it appears that his negligent conduct conduced to set the inherent infirmity in the goods in motion, to the damage of the owner, it will suffice; in other words, the exemption on account of the infirmity of the goods obtains only where the loss is solely attributable to such infirmity, for if the carrier's negligence commingles with the infirmity and

contributes in part to the damage, liability is entailed
therefor against the carrier for its tortious conduct.
[See Gratiot St. Warehouse Co. v. M. K. & T. R. Co.,
124 Mo. App. 541, 102 S. W. 11.] There is evidence
in the record suggesting that though the germ of ani-
mal life slumbered in the nuts, it would not have re-
sulted in damage to plaintiff but for the fault of
defendant in unduly withholding them from cold stor-
age in a closed car for a considerable number of days
during the heated season. This being true, the question
as to whether or not the loss occurred solely from the
inherent infirmity in the goods or was induced by de-
fendant's carelessness as a contributing cause was one
for the jury.

It is earnestly argued that, though an unusual
delay of eight or nine days occurred in this shipment,
the record is devoid of evidence tending to prove neg-
ligence on the part of the carrier, for the reason the
particular cause of such delays is not pointed out in
the proof. An officer of the Traders' Dispatch testi-
fied for plaintiff that the delay occurred and that,
though he had investigated the cause thereof, he did
not remember what it was. However, it is shown by
the overwhelming evidence that, though the freight
was perishable and so known to be by the Traders'
Dispatch, if not by this defendant, the car was per-
mitted to stand over twenty-four hours at Sayre,
Pennsylvania, and forty hours in Buffalo, New York,
while the regular time from New York to St. Louis
was from seventy-two to one hundred and twenty
hours and other trains containing freight, in charge
of the Traders' Dispatch, were running out of New
York to St. Louis daily, passing this particular car
on the line. The shipment consumed four days from
Cleveland, Ohio, to East St. Louis and was delayed
by the Terminal Railroad Assn., a member of the
Traders' Dispatch, at East St. Louis, three days,
within four or five miles of its final destination. While

it is true that mere delay standing alone is not evidence of negligence, such unusual and extraordinary delays at different points along the route, when it appears. other shipments in possession of the same carrier are passing along, are circumstances sufficient to afford a strong inference that defendant neglected its obligation in respect of exercising diligence, to the end of transporting the freight within a reasonable time;. for when the relation and situation of the carrier and shipper are considered, but slight evidence in respect of such matters will suffice, as the parties are in no sense on equal footing. It would be difficult, indeed, for the shipper to point out the precise cause of delay and that it was a negligent one, and the law reckons. with this by casting the burden of proof on the carrier who is possessed of all the facts which may explain its otherwise seeming default when the shipper has. shown collateral facts and circumstances sufficient to. suggest a reasonable inference of neglect on the part of the carrier. There is an abundance here to support the charge of negligence touching the carrier's obligation to transport the goods within a reasonable time,. as will appear by reference to the following authorities which are apropos to the question. [Gilbert v. Chicago, R. I., etc. R. Co., 132 Mo. App. 697, 112 S. W. 1002; Libby v. St. L. I. M., etc. Ry. Co., 137 Mo. App. 276, 117 S. W. 659; Bushnell v. Wabash R. Co., 118 Mo. App. 618, 94 S. W. 1001; Anderson v. Atchison,. T. & S. F. R. Co., 93 Mo. App. 677, 67 S. W. 707; Hamilton v. Wabash R. Co., 80 Mo. App. 597, 599, 600.] But the mere fact that negligence is shown with respect to the obligation to transport within a reasonable time will not of itself authorize a recovery for plaintiff unless it appears, too, that such negligence was the proximate, or operated as a direct, cause to induce the generation of animal life in the nuts and thus entailed the damage complained of. On this feature of the case the record is not replete with evidence, but we

believe there is sufficient in the facts and circumstances to authorize a reasonable inference that the worms in the nuts were occasioned through their being retained in a closed box car for a number of days in railroad yards along the route during a heated spell. It appears that shelled English walnuts are kept by the dealers in cold storage in order to prevent the hatching of the germ which inhabits them. The identical nuts involved here were in cold storage for a period of three months in New York before the shipment and it is to be inferred that had they reached St. Louis within three to five days and been deposited in cold storage again, the worms would not have appeared. It is true the president of plaintiff company said that at eighty degrees it would require from three to six weeks to hatch the eggs. The proof is clear, however, that at from seventy to seventy-five degrees the germs will hatch and give forth worms. At different places along the route the thermometer at the government weather stations is shown to have registered from sixty-eight to seventy-five degrees. But the thermometer readings were had at the weather stations and not inside of a closed box car laden with boxes of shelled nuts. There is evidence in the record from which it may be inferred that the condition of temperature would be considerably higher than eighty degrees within an inclosed box car laden with shelled nuts while the car was standing at different places in the railroad yards throughout the country during the days the thermometer ranged from seventy to seventy-five at the nearby weather stations. In view of all of the facts and circumstances, and the inferences which they afford, we believe this question, too, was one for the jury.

Ordinarily the measure of damages in cases such as this one is the difference between the market value of the goods if sound and the market value thereof after the injury at the point of destination, with in-

terest from the time the goods should have been de-
livered, less the amount of freight charges due for
their transportation. But in this case the bill of lading
expressly stipulates that the amount of any loss or
damages for which the carrier may be required to
respond shall be computed at the value of the property
at the place and time of shipment. According to this,
the parties expressly agreed that the damage should
be ascertained by reference to the value of the property
at New York on October first, for such was the date of
shipment. It is competent for the parties to so con-
tract and the courts sustain and enforce their stipu-
lation in that behalf in accordance with the standard
of cost or value which they have thus fixed. [See Gra-
tiot St. Warehouse Co. v. M., K. & T. R. Co., 124 Mo.
App. 545, 566, 567, 102 S. W. 11; Caples v. Louisville,.
etc. R. Co., 17 Mo. App. 14; Rogan v. Wabash R. Co.,
51 Mo. App. 665; Dean v. Toledo, St. L., etc. R. Co.,
148 Mo. App. 428, 448, 128 S. W. 10.] There is no
evidence as to the value of the nuts at New York at
the time of shipment. The evidence touching this mat-
ter relates to their value in St. Louis and the amount
of loss and depreciation; that is, by showing the per-
centage of nuts which were destroyed and thrown away
and the percentage of the remainder which were dam-
aged at so much per pound. On this evidence the in-
struction for plaintiff touching the measure of damages
authorized the jury to award as damages the difference
between the value of the nuts in question as they were
delivered to plaintiff and the value of the nuts had
they been delivered to it without an unreasonable neg-
ligent delay in the transportation, etc. This instruc-
tion treated with the value of the nuts at St. Louis
and the difference therein before and after their de-
preciation as the standard by which the damage should
be measured when under the express contract it should
have set up instead their value at New York on Octo-
ber first and the difference before and after injury in

such values. Under the stipulation contained in the bill of lading, this was an erroneous direction for which the judgment must be reversed. The judgment will, therefore, be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.